In the Matter of NATHANIEL H. LYONS et al., Copartners under the Firm Name of N. H. LYONS & COMPANY, Respondents, against HARRY M. PRINCE, as Deputy Commissioner of the Department of Housing and Buildings of the City of New York, Appellant

Argued October 18, 1939; decided November 28, 1939.

*William C. Chanler, Corporation Counsel (Stanley Buchs-baum, Paxton Blair* and *Francis J. Bloustein* of counsel), for appellant.

*I. Maurice Wormser* and *George G. Lake* for respondents.

LEHMAN, J. The petitioners are the lessees of premises in the city of New York upon which a building was erected in 1889. The cellar and first floor of the building are used for business purposes. The floors above are used as a lodging house with accommodations for over one hundred lodgers. In October, 1921, the then Commissioner of Buildings issued a certificate of occupancy certifying that the building on the premises " conforms substantially * * * to all the requirements of the building code and building zone resolution of the City of New York for an existing, non-fireproof, cellar and five story restaurant and lodging house." The lessees have not, since then, failed to comply with any order given to them by the municipal authorities and there is no contention that the building has been allowed to become seriously deteriorated.

In December, 1938, the defendant Prince, as Deputy Commissioner of the Department of Housing and Buildings of the City of New York, served a notice upon the lessees of the building requiring them to " correct conditions existing in violation of the law," and specifying the conditions to be corrected. The reason for giving this notice is that, in the opinion of the Commissioner of Buildings and his Deputy, the building cannot safely be used for a lodging house. The changes required, we may assume, are calculated to retard fire and, in case of fire, to provide better means of egress from the building; but for the most part the conditions which the lessees have been ordered to correct do not violate any requirement, *formulated by statute or ordinance*, which is applicable to this building. If the Commissioner of Housing and Buildings has power to determine, without legislative formulation, what standard of safety should be required for lodging houses and to order the occupant of each lodging house to make such structural

alterations as would, in the opinion of the Commissioner, provide reasonably safe conditions for occupants of lodging houses, then orders of the Commissioner to make such structural alterations must be obeyed; at least, unless, in the particular case, the courts decide that the action of the Commissioner has been arbitrary. The lessees, however, contend that the Legislature has not attempted to confer so broad a power upon the Commissioner of Buildings and that the Legislature could not, if it would, delegate to the Commissioner discretionary power to determine what form of construction would, in a particular case, render a lodging house reasonably safe and what changes should be made in existing buildings for such purpose, without defining the limits of the Commissioner's discretion and fixing the rules and standards which must govern its exercise. Upon that ground the lessees challenge the power of the Commissioner to order structural changes where no statute or ordinance requires that *all buildings* of similar class used as lodging houses in the city of New York shall conform to the standards of construction which, by notice, the Commissioner of Buildings seeks to impose.

The required alterations specified in the notice fall into three separately numbered groups. In regard to the alterations in the group numbered one, the notice states that, " In accordance with Section 6.1.5 of the Building Code of the City of New York, Section 643A-2.0 and C26-276.0 of the Administrative Code for the City and Section 309 of the Multiple Dwelling Law, you are hereby ordered to correct conditions existing in violation of the law as follows." In regard to the alteration numbered two, the notice states that, " In accordance with Section 61 of the Multiple Dwelling Law, you are hereby ordered to correct conditions existing in violation of the law as follows." In regard to the group numbered three, the order states, " In accordance with Section 10.11 of the Building Code of the City of New York, Section C26-669.0 of the Administrative Code for the City of New York, and Section 309 of the Multiple Dwelling Law, you are hereby ordered to correct conditions existing in violation of the law as follows."

The petitioners did not challenge the right of the Commissioner to order the structural change, numbered two, in accordance with section 61 of the Multiple Dwelling Law (Cons. Laws, ch. 61-a). That section provides in part: " Where business is conducted in any non-fireproof multiple dwelling hereafter erected, the walls and ceilings of the space where such business is conducted shall be fire-retarded." Here, the discretion confided to the Commissioner is limited to determination of the kind of fire-retarding construction that shall be required, and for the reasons pointed out in the dissenting opinion of CRANE, Ch. J., in this case, the delegation of such discretion to an administrative officer is justified by practical considerations and by principle and authority. The attack of the petitioner is confined to the items in groups numbered one and three.

The ordinances and statutes referred to in the notice relating to items in groups numbered one and three formulate no structural requirements to which all buildings used for lodging houses must conform. Concededly, the building leased to these petitioners, when originally constructed, complied with every definite requirement of the law; and approval of the plans and specifications was given in accordance with the law as it then existed. Concededly, too, no statute or ordinance has been enacted which requires that buildings, heretofore used as lodging houses and conforming to the standards of structural safety required when such use began, shall conform to higher standards imposed for buildings erected or altered for such use thereafter. (Cf. Multiple Dwelling Law, § 13.) If the Commissioner has power to require the petitioners to make the specified alterations, that power must be traced to the provisions of section 309 of the Multiple Dwelling Law and is a plenary power, as Chief Judge CRANE points out, which may be set aside by the court only upon the ground that the Commissioner has acted arbitrarily.

The title of section 309 of the Multiple Dwelling Law is, " Demolition of and repairs to buildings by the department charged with the enforcement of this chapter." The section

is very long, but in so far as material here provides: " 1. Whenever any multiple dwelling or the plumbing, sewerage, drainage, light or ventilation thereof, is in the opinion of the department charged with the enforcement of this chapter in a condition or in effect dangerous to life or health, the said department may declare that the same, to the extent it may specify, is a public nuisance, and may order the same to be removed, abated, suspended, altered or otherwise improved or purified as the order shall specify. The said department may order or cause any multiple dwelling or part thereof, or any excavation, building, structure, sewer, plumbing, pipe, passage, premises, ground, matter or thing in or about a multiple dwelling or the lot on which it is situated, to be purified, cleansed, disinfected, removed, altered, repaired or improved."

That section should not, I think, be construed as intended to give the Commissioner power to order structural alterations except where the *statute* has imposed upon owners or occupants of multiple dwellings a standard or requirement which necessitates such alterations. It seems to me entirely unreasonable to construe that section as intended to give to the Commissioner power to decide what structural alterations, not required by the Legislature, would render safe, for use as multiple dwellings, buildings which, in the opinion of the Commissioner, are not safe.

It would be unreasonable, because it is the function of the Legislature to determine what standards of safety should be required for multiple dwellings, and it may not delegate that authority to an administrative officer. In general, the Multiple Dwelling Law has set standards for buildings erected thereafter. In regard to *tenement houses* it has gone further and has provided that, " Buildings used as multiple dwellings, though erected prior to 1901 in accordance with the requirements of the laws of the State which were then in force, must now comply with new requirements and higher standards enacted by the legislature, for the protection of the safety and health of those who may live in these houses and, indirectly, of the people of the State." (*Adamec* v. *Post*, 273

N. Y. 250, 253.) It is to be noted, however, that in the opinion in that case the statutes which imposed that requirement upon new buildings are set forth. Discretion was not conferred upon the Commissioner of Buildings to determine what standards should be applied in a particular case. To hold that the Legislature may entrust to an administrative officer plenary discretion to determine how, when and where the safety and welfare and health of the public should receive protection from the dangers created by improperly planned multiple dwellings or lodging houses, seems to me a denial of everything we have said in past cases as to the limited discretion which the Legislature may delegate to an administrative officer. (Cf. *Darweger* v. *Staats,* 267 N. Y. 290, and, especially, the distinction drawn between administrative and legislative powers in the case of *Matter of Small* v. *Moss,* 279 N. Y. 288.)

Here, under the construction urged by the city, the Legislature must have intended to delegate to the Commissioner legislative power to determine what standards should be applied and, in addition, an administrative power to determine who should be subject to such standards, without any limitation except the usual implied limitation, to which even legislative bodies are subject, that the determination must be reasonable. We do not hold that where the Legislature has said that a fire-retarding construction must be used it may not leave to an administrative officer determination of what form of fire-retarding construction would be best suited to a particular case. Nor do we hold that where the Legislature directs that fire escapes must be erected, it may not leave to an administrative officer choice of where such fire escapes should be located and how they should be erected. We do hold, however, that where a man is using for a lawful purpose, with the approval of the State, a building which has been constructed and is maintained in accordance with rules and standards formulated directly or through delegated authority by the Legislature, the Legislature may not delegate to an administrative officer power to decide whether higher standards and

additional requirements should be exacted for the protection of the public health and safety. That is true even where higher standards and additional requirements might reasonably be exacted and even where the Legislature has been remiss in failing to exact them.

The order should be affirmed, with costs.

CRANE, Ch. J. (dissenting). This case involves the application of the Multiple Dwelling Law and the right of the Deputy Housing Commissioner to require certain changes in the construction or arrangement of lodging houses. This is said to be a test case, as in the boroughs of Manhattan and The Bronx there are about one hundred and twenty-five lodging houses which upon inspection have been found in bad condition, constituting dangerous fire hazards to life and property. This is a statement of an inspector of the Fire Department of the City of New York.

The petitioners are lessees of a building, No. 25 Bowery, which was erected in the year 1889. The premises consist of a cellar and a five-story brick building, fifty-nine feet in height, with a frontage of twenty-seven feet and a depth of eighty-three feet. Since approximately 1900 there has been a shop in the cellar and a restaurant and tailor shop accommodating about sixty persons on the first floor. The second, third, fourth and fifth floors are used for lodging house purposes, the second floor accommodating seventeen lodgers, the third floor thirty-six, the fourth floor thirty-five, and the fifth floor thirty-six. Apparently lodging in this place costs not more than thirty cents a night. The occupants of these lodging houses are so poor that they cannot really take care of themselves and have to sleep in these cheap lodging houses as there is no other place for them but the street or a home of some kind.

The Deputy Commissioner of the Department of Housing and Buildings on the 16th day of December, 1938, addressed a letter to Nathaniel H. Lyons, one of the petitioners, wherein he said that the building 25 Bowery had theretofore been classified as a Class B non-fireproof lodging house; that,

in accordance with certain sections of the Building Code and the Administrative Code (L. 1939, ch. 929) and the Multiple Dwelling Law, the petitioners were ordered to correct conditions existing in violation of law, which briefly may be stated as follows: To provide a bulkhead in the roof directly over the stairs in the public hall, and a skylight for ventilation; fire retard the public halls and stairways, the ceilings and dormitories, and also fire retard the ceiling of the store throughout the first story and the ceiling of the cellar. The material for this fire retarding was specified. To comply fully with the order would cost about $2,900.

This proceeding was thereupon started by the petitioners to seek relief, to restrain the enforcing of this order on the ground that the Housing Commissioner had no power to make any such order. It is not claimed that he acted arbitrarily or through caprice; it is simply alleged that he lacked any authority at law. It is true, however, that the prayer for relief in the petition asked for either a peremptory or an alternative order. Affidavits having been submitted on both sides, the Special Term denied the application in an order which has been reversed by the Appellate Division, that court holding as a matter of law that the orders of the defendant had no support under the statutes. Let us turn to these statutes.

The Multiple Dwelling Law (Laws of 1929, chap. 713) declared the policy and intent of the Legislature, in section 2, in these words: " It is hereby declared that * * * overcrowding of multiple dwelling rooms, inadequate provision for light and air, and insufficient protection against and defective provision for escape from fire, and improper sanitation of multiple dwellings in certain areas of the state are a menace to the health, safety, morals, welfare, and reasonable comfort of the citizens of the state; and that the establishment and maintenance of proper housing standards requiring sufficient light, air, sanitation, and protection from fire hazards are essential to the public welfare. Therefore the provisions hereinafter prescribed are enacted and their necessity in the public interest is hereby declared as a matter of legislative determination."

The provisions of the law which follow classify the lodging house of the petitioners in Class B of multiple dwellings. This law, therefore, covers this class of building. There are many provisions in the law relating to the height and bulk of multiple dwellings to be erected, the yards, the depth of interior lots and the nature of passages which must be fireproof. There are provisions for the lighting and ventilation of rooms and of the windows in rooms, cooking spaces, and so forth. There are skylights for stairs, artificial hall lighting; and title 2 of article 3 provides for fire protection. We also have a title dealing with sanitation, including plumbing and drainage. Section 78 provides that every multiple dwelling and every part thereof shall be kept in good repair. Note should be made of this section because of the claim hereafter made. Article 5 deals with non-fireproof multiple dwellings, including sections regarding fire-escapes, exits, stairs and public halls.

Article 7 relates to existing tenement houses. Section 210 contains this regulation: " No provision of this article shall be construed or deemed to require any structural change or structural alteration in any tenement house erected after April eleventh, nineteen hundred and one and lawfully maintained and occupied as a tenement house at the time when this chapter becomes effective."

We find throughout this law an attempt to standardize, so far as possible, multiple dwellings and tenement houses that are to be erected after the passage of the act. These main requirements, by the very nature of things, may be supplemented by the rules and regulations of the department in minor details. It is not conceivable, however, that the Legislature intended old lodging houses should be left without the control of the Housing Commission to bring them within the main purpose of the Multiple Dwelling Law which sought the safety and the welfare of the poorer classes in the city; that is, we cannot conceive the Legislature as providing for future construction and leaving the old buildings or multiple dwellings to exist without some remodelling when unsafe. The purpose of the law was to

give to the city authorities the right to clean up unsafe and unhealthy buildings which were to be used as tenements or multiple dwellings. This purpose, we think, finds further expression in section 309. The heading is: " Demolition of and repairs to buildings by the department charged with the enforcement of this chapter," and the section reads: " Whenever any multiple dwelling or the plumbing, sewerage, drainage, light or ventilation thereof, is in the opinion of the department charged with the enforcement of this chapter in a condition or in effect dangerous to life or health, the said department may declare that the same, to the extent it may specify, is a public nuisance, and may order the same to be removed, abated, suspended, altered or otherwise improved or purified as the order shall specify. The said department may order or cause any multiple dwelling or part thereof, or any excavation, building, structure, sewer, plumbing, pipe, passage, premises, ground, matter or thing in or about a multiple dwelling or the lot on which it is situated, to be purified, cleansed, disinfected, removed, altered, repaired or improved. * * * If any order of the department is not complied with or not so far complied with as the said department may regard as reasonable, within twenty-one days after the service thereof, then such order may be executed by said department through its officers, agents or employees or contractors."

Which is the department in the city of New York charged with the enforcement of this chapter? The last charter of the city of New York (effective January 1, 1938), section 644, makes it the Department of Housing. The section reads.

" § 644. a. There shall be in the department a division of housing the head of which shall be a deputy commissioner.

" b. The division of housing shall enforce the multiple dwelling law and any other provision of law, rule or regulation in relation to the maintenance, use, occupancy, safety, sanitary condition and inspection of any building or portion thereof which is occupied or is arranged or intended to be occupied as the home, residence or sleeping place of one

or more human beings, not, however, including one or two-family houses. If a building is occupied in part for such purposes, the commissioner may assign jurisdiction over it to the division, and he may assign other duties to the division not inconsistent with the duties conferred on it in this charter."

The crux of this case lies in the wording of section 309. That this defendant is the right one to enforce the rules and regulations of the Multiple Dwelling Law is conceded. The claim of the petitioners, however, is that this broad wording of section 309 empowers the Housing Commission or the Deputy to order repairs only, and not to cover any other changes whatever. We have noted that in section 78 when repair was referred to, the word " repair " alone was used. We have something more in section 309. We have the word " demolition " in the title, and the words " removed," " altered," " improved," in the text. The petitioners eliminate all of these words, and say that " alter," "' improve," " remove," merely means " repair." In view of the purpose of the Legislature to make lodging houses safe, protect them from fire, and afford proper ventilation, we must give meaning to all these words in the section. We thus find that the Commissioner or his Deputy had the right to issue the orders here in question; that is, he had the right to do so. Whether such orders were reasonable or arbitrary is not presented on this appeal. The right alone has been questioned, although there are some sentences like the request for an alternative order in the prayer of the petitioners, as well as the statement in an affidavit that the order is unreasonable which might leave open the application for further relief.

Now as to the procedure: Although the Department of Housing can carry out its own orders, yet it may apply, pursuant to section 306, in appropriate action or proceeding, to the Supreme Court to prevent unlawful maintenance, and to restrain or correct or abate a nuisance, or to prevent any illegal act in and about such dwelling. It may apply to the Supreme Court or a justice thereof for an injunction or

order granting the relief, or it may apply to the Supreme Court or a justice thereof for an order authorizing the Department to execute and carry out the provisions of its order. " The court, or any justice thereof, is hereby authorized to make any order specified in this section." The court will act judicially and not as an administrative officer and, we take it, that if upon such application of the Department it finds that the requirements are so unreasonable as to be arbitrary it may refuse to enforce the Department's order. We take it that upon this proceeding, under article 78 of the Civil Practice Act, in which the petitioners made the first move and sought to enjoin the Department, the same proceeding may be followed or should be followed, that is, the court may grant the application of the petitioners if it finds that the work required by the Department is so unnecessary and unreasonable as to be arbitrary and oppressive. The action of the Department is not beyond judicial review. Any other interpretation would justify the taking of property without due process of law. There must be some remedy afforded for a review by the courts of the order of the Department of Housing like the review of any other administrative body. Opportunity must be afforded to challenge the legality of the demand. This does not mean that the courts substitute their judgment for that of the Commissioner or the Department; rather, it reviews the determination to see that there was reasonable necessity for the action, and that it is not so unreasonable as to be a mere arbitrary or capricious act. (See *Matter of Ballston Town Highway*, 281 N. Y. 322.)

We do not think that the Administrative Code nor the Building Code, both of which are general in application, supersede or limit the Multiple Dwelling Law which applies to certain classes of buildings only and takes precedence in this field. Thus, section 646, subdivision g, of the charter, dealing with the Department of Housing and Buildings, refers to certificates of occupancy. This section was carried over from the old Building Code and was section 411-a of the old city charter. (L. 1901, ch. 466,

as amd.) By the McCall Act (Laws of 1933, ch. 764) section 411-a became section 412, and subdivision 5 became subdivision 3. It is now in the present charter as section 646, subdivision g. It reads:

" g. Every certificate of occupancy shall, unless and until set aside or vacated by the board of standards and appeals or a court of competent jurisdiction, be and remain binding and conclusive upon all agencies and officers of the city, and shall be binding and conclusive upon the department of labor of the state of New York, as to all matters therein set forth, and no order, direction or requirement at variance therewith shall be made or issued by any agency or officer of the city, nor by the department of labor of the state of New York, or any commission, board, officer or member thereof."

The petitioners claim that they had a certificate of occupancy delivered to them in 1921, and that the Commissioner of Housing can make no order inconsistent with it until it has been set aside by some court. Surely no such cumbersome proceeding was intended by these provisions. Turning to the certificate of occupancy as found in the record, we find that it merely certifies that as of October 19, 1921, the building located at 25 Bowery conforms substantially to approved plans, and the requirements of the Building Code and the Building Zone Resolution of the City of New York for a non-fireproof, cellar and five-story restaurant and lodging house. Of course the requirements were of that date. The order of the present Commissioner of Housing is in no way inconsistent with this, nor denies that the certificate was good for the time; but surely since 1921 buildings materially deteriorate or fire hazards increase, and we cannot read this section as in any way preventing the salutary supervision and directions in the Multiple Dwelling Law for the protection of night lodgers at thirty cents per night. As stated before, the Multiple Dwelling Law applies to a special class of building, whereas the provisions of the charter are general in nature.

For these reasons the judgment of the Appellate Division should be reversed. However, in view of the nature of this proceeding and the doubt which seems to have existed in all minds regarding the right to review, and the nature of that review, I think it right that in accordance with the procedure as I have outlined it, this case should go back to the Special Term for a hearing upon the merits and a determination as to the arbitrary nature of the orders.

Order of the Appellate Division should be reversed and a hearing ordered, without costs to either party.

HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur with LEHMAN, J.; CRANE, Ch. J., dissents in opinion; O'BRIEN, J., taking no part.

Order affirmed.