Van Voorhis, J.
Petitioner applies for the annulment of a determination by the State Liquor Authority revoking his store license for the sale of liquor for off-premises consumption. His original license was issued in October, 1946. His license was suspended for the periods from February 16,1948, to February 27, 1948, and from July 19,1948, to August 23,1948, for cutting prices in violation of the Fair Trade Law (General Business Law, art. XXXVA). Finally, on March 11, 1949, his license was revoked. The revocation order refers to the receipt by petitioner of an unfilled order for the sale of an excess quantity of liquor, and to one actual sale of an excess quantity to a customer, and to some informalities in the keeping of books and records ; but the reason on account of which petitioner’s license was revoked is clearly shown to have been the finding that he had violated the Fair Trade Law for the third time by cutting prices on sales.
Paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law, empowering the authority to adopt rules and regulations, specifies that for a first violation of such rule or regulation a license may be suspended for not exceeding ten days; for a second offense, it may be suspended for not exceeding thirty days; and that for a third offense the authority may suspend, cancel or revoke the license. Petitioner was found guilty of violating for the third time rule 26, adopted by the authority, requiring the adoption and observance of fair trade contracts fixing resale prices.
Inasmuch as the other charges proven were too unsubstantial to have warranted the complete revocation of petitioner’s license, the revocation order must be annulled and the proceeding remitted to the Authority unless the cancellation of this license w;as authorized by these alleged violations of the Fair Trade Law. The attention of the court is directed, accordingly, to that issue.
Article XXIV-A (consisting of §§ 369-a to 369-e) of the General Business Law provides that no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade-mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of New York notwithstanding that it prohibits the *220 buyer from reselling such commodity except at the price stipulated by the vendor, and notwithstanding that such contract may require any dealer to whom the buyer may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee (§ 369-a). Willfully and knowingly advertising, offering for sale or reselling any commodity at less than the price stipulated in any contract thus entered into, whether the person so advertising, offering for sale or reselling is or is not a party to such contract, is made unfair competition and actionable at the suit of any person damaged thereby (§ 369-b). In other words, if the producer of any branded commodity enters into a fair trade contract of this description with any buyer or dealer, fixing the price on resale, such price must be observed on resale by all other buyers or dealers who have notice of said contract, whether or not they be parties thereto. The constitutionality of this provision was at first rejected by the Court of Appeals (Doubleday, Doran & Co. v. Macy & Co., 269 N. Y. 272), but that decision was overruled in Bourjois Sales Corp. v. Dorfman (273 N. Y. 167) after a similar statute of Illinois had been held to be constitutional by the Supreme Court of the United States in Old Dearborn Distributing Co. v. Seagram-Distillers Corp. 299 U. S. 183). In that case it was pointed out that informed opinion differs cpncerning whether such legislation is related to the public health, safety, morals and welfare, and the Supreme Court said (p. 196): “ We need say no more than that the question may be regarded as fairly open to differences of opinion. The legislation here in question proceeds upon the former and not the latter view; and the legislative determination in that respect, in the circumstances here disclosed, is conclusive so far as this court is concerned. Where the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the Legislature. Radice v. New York, 264 U. S. 292, 294; Zahn v. Board of Public Works, 274 U. S. 325, 328, and cases cited.”
We assume, but without deciding, that it would be within the competence of the Legislature to determine that mandatory price-fixing in the sale of alcoholic beverages would be a proper exercise of the police power. The important point for this case is that the Legislature has not done so; on the contrary, paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law purports to authorize the State Liquor Authority “ in its discretion ” to prohibit “ the sale of any or all alcoholic beverages * * * except pursuant to a fair *221 trade contract entered into in accordance with the provisions of article twenty-four-a of the general business law.”
Price-fixing in the sale of commodities has always been regarded as one of the most controversial of public questions, both from the viewpoints of economics and constitutional law. Whether mandatory price-fixing shall be adopted is not a fit subject to be relegated to determination by an administrative board, under the guise of making rules and regulations to facilitate the accomplishment of its purpose to enforce the liquor laws as enacted by the Legislature.
Under section 1 of article I'll of the New York State Constitution, “ The legislative power of this State shall be vested in the Senate and Assembly ”, and “ This legislative power cannot be passed on to others.” (Darweger v. Staats, 267 N. Y. 290, 305.) It is the function of the Legislature to determine fundamental matters of policy, such as whether or not there should be mandatory price-fixing in the sale of intoxicating liquors. The Alcoholic Beverage Control Law is filled with specific directions concerning practices which the Legislature has required or forbidden to be followed in conducting the liquor traffic, many of which are of trivial importance compared to a requirement that all branded wines and liquors shall be sold at fixed prices (see art. 8, §§ 100-130 passim,).
What has been done here goes far beyond anything enacted by the Fair Trade Law. Such laws are primarily designed to safeguard the producers of branded commodities in the ownership of their brand names; the purpose here is different, viz., by avoiding price wars, to foster and promote temperance and provide for the orderly distribution of alcoholic beverages. The motivation in the latter instance has nothing to do with protecting the property rights of producers in brand names. Under the Fair Trade Law, the existence of price-fixing depends upon the voluntary act of the owner of the brand name in entering into or refraining from entering into a fair trade contract; in the present case, price-fixing of branded alcoholic beverages is made compulsory by the State Liquor Authority except as it may, in its unlimited discretion, choose to make exceptions. Rule 26, purporting to have been adopted by the Authority pursuant to the discretion conferred upon it by paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law, states that “ no licensee shall sell, offer for sale or solicit any order for alcoholic beverages, the container of which bears a label stating the brand or the name of the owner or producer, *222 unless the manufacturer or wholesaler of such brand shall first have entered into a fair trade contract pursuant to Article XXIV-a of the General Business Law establishing minimum consumer resale prices * * * or unless such licensee has applied for and obtained written permission from the Authority to sell, offer for sale or solicit an order for alcoholic beverages without having entered into a fair trade contract as hereinabove prescribed.” (Subd. 2.)
There is a long line of decisions holding delegations of such important power to be unconstitutional. In Darweger v. Staats (supra) involving the price-fixing in New York State of coal under the State Recovery Act (L. 1933, ch. 781), the Court of Appeals said (p. 304): “ Stripped of all its verbiage, and narrowing these provisions down to the real authority, we find that the Legislature of the State of New York has turned over to the National Administrator the question of determining whether there shall be price-fixing in New York State of coal and what it shall be. The Legislature has left too many things to be determined by other bodies to make this law constitutional.” The circumstance that so wide a field of discretion was left to a national rather than to a state officer, seems not to have been the crucial point. The court said at p. 307: “To repeat, the Legislature does not declare that any emergency exists in the coal trade as conducted in intrastate commerce. It does not even declare that this business needs regulating. It leaves it entirely to an outside authority to say whether or not it shall be regulated, and what the regulations shall be.”
In People v. Klinck Packing Co. (214 N. Y. 121, 138) it was said:
“ The proposition is so well settled that we need not cite authorities in its support that the legislature cannot secure relief from its duties and responsibilities by a general delegation of legislative power to someone else. It seems to us that that is precisely and broadly what is here attempted. The provision as a whole means that certain employees shall be exempt if the commissioner of labor ‘ in his discretion approves.’ (L. 1914, ch. 396.)
“ The question whether the statute shall take effect in any, all, or no cases is left wholly to his volition.”
That statement is precisely applicable to the discretion regarding price-fixing which this statute purports to confer upon the State Liquor Authority.
The direction contained in paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law that the *223 rules and regulations of the Authority “ shall be calculated to foster and promote temperance, and provide for the orderly distribution of alcoholic beverages ” does not set a standard by which the action of the Authority is controlled in determining whether or not there shall be mandatory price-fixing. In arguing that price-fixing is a proper exercise of the police power, the brief for the Authority compares it to prohibition, pointing out that if the State could prohibit the sale of all intoxicants, it could resort to the less drastic means of prohibiting their sale except at fixed prices to promote public policy. Granting that this may be true, it could not reasonably be argued that the Legislature could delegate to an administrative board the decision of the important question whether or not there should be state-wide prohibition, even though such a delegation of power were accompanied by a homily that the board should decide one way or the other in accordance with whether it deemed that prohibition would “ foster and promote temperance ”.
In Matter of Lyons v. Prince (281 N. Y. 557) it was held that the Legislature may not delegate to an administrative officer power to decide whether higher standards and additional requirements in the construction and maintenance of buildings should be exacted for the protection of public health and safety, not even where higher standards and additional requirements might reasonably be exacted, nor where the Legislature itself has been remiss in failing to do so.
In Matter of Small v. Moss (279 N. Y. 288) it was held that the commissioner of licenses of the city of New York has no power to declare legislative policy, or to create the standards which must govern the granting of a license, and that the latter function pertains only to the Legislature or to the city council in the exercise of its legislative power. To the same effect is Matter of Seignious v. Rice (273 N. Y. 44).
In Packer Collegiate Inst. v. University of State of N. Y. (298 N. Y. 184) a statute was held unconstitutional as an attempted delegation of legislative power, in violation of section 1 of article III of the State Constitution, which attempted to empower the State Commissioner of Education to register and license, or to refuse to register and license, private schools under regulations to be adopted by him, and subject to no legislative standards or limitations.
In Panama Refining Co. v. Ryan (293 U. S. 388) and in Schechter Corp. v. United States (295 U. S. 495) delegations of legislative power to determine whether prices should be fixed were held to be unconstitutional, in the absence of indicated *224 policy to guide or limit the executive department in making such determinations.
It should he borne in mind that paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law does not direct the Authority to fix prices in accordance with some declared standard or policy, but delegates to the Authority the power to determine the important and delicate question whether price-fixing of branded alcoholic beverages does tend to foster and promote temperance, and provide for orderly distribution of liquor. The Constitution of the State and the orderly processes of representative government require that the Legislature should make such important decisions itself. Otherwise there is no method by which the people can locate responsibility for such fundamental determinations of public policy.
Paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law likewise violates section 16 (formerly 17) of article III of the New York State Constitution, which provides: “ No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act.”
In Darweger v. Staats (267 N. Y. 290, 308, supra) the Court of Appeals found this section of the Constitution to have been violated, and stated: “ The evils sought to be avoided by this prohibition were stated in People ex rel. Commissioners v. Banks (67 N. Y. 568), where the court said: 1 The evil in view in adopting this provision of the Constitution, was the incorporating into acts of the legislature by reference to other statutes, of clauses and provisions of which the legislators might be ignorant, and which affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would not receive the sanction of the legislature if fully understood (p. 575.) ’ ”.
The incorporation of the Fair Trade Law by reference in paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law, even if it were to take effect without being subject to the fiat of the Authority, would violate the spirit of this provision of the Constitution for the significant reason that the Fair Trade Law was adopted for a different purpose, viz., to enable the owner of a brand name to protect such name by fixing resale prices at its own election (Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183, *225 supra), whereas it is incorporated in the Alcoholic Beverage Control Law for the purpose of facilitating the enforcement of the liquor laws. The Fair Trade Law is not mandatory on producers, and cannot be made so without being removed from its context and altered in substance. The Legislature is forbidden to do that except by inserting the applicable provisions of the old law in the new act. An illustration of the reason for this, and of the confusion and injustice which can result, may be found in the contention contained in the brief of counsel for the Authority, that in the process of transposing the Fair Trade Law from the General Business Law to the Alcoholic Beverage Control Law, the limitation of section 369-b of the former has been eliminated that a person can violate the Fair Trade Law only by “wilfully and knowingly” advertising, offering for sale or selling any commodity at less than the price stipulated in the fair trade contract. The attorney for the Authority has argued that it is not necessary to show that the licensee had notice of the schedules of fixed prices in fair trade contracts made with other dealers, in order to revoke his license for disregarding them. The elimination of such an important qualification, without saying anything about it, is one of the evils expressly condemned in People ex rel. Commissioners v. Banks (67 N. Y. 568, 576) which inhere in the incorporation of clauses of other statutes by reference “ of which the legislators might be ignorant, and which affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would not receive the sanction of the legislature if fully understood. ’ ’
For the reasons stated, paragraph (b) of subdivision 12 of section 17 of the Alcoholic Beverage Control Law, and rule 26 of the State Liquor Authority respecting mandatory price-fixing are invalid.
The determination of the State Liquor Authority revoking petitioner’s license should be annulled, with $50 costs and disbursements, and the matter should be remitted to the State Liquor Authority for suitable action with respect to the other charges against petitioner than violation of mandatory fair trade contracts.
Peck, P. J., Glennon, Cohn and Callahan, JJ., concur.
Determination unanimously annulled, with $50 costs and disbursements to the petitioner and the matter remitted to the State Liquor Authority for suitable action with respect to the other charges against petitioner than violation of mandatory fair trade contracts. Settle order on notice.