In the Matter of the Application of FREDERICK SMALL, Petitioner, Appellant, for a Peremptory Mandamus Order against PAUL Moss, as Commissioner of Licenses of the City of New York, Respondent.

First Department, June 24, 1938.

*Israel Hoffman* of counsel [*David Steckler* with him on the brief; *Schulz & Williamson*, attorneys], for the appellant.

*Alan M. Stroock* of counsel [*Paxton Blair* and *David I. Shivitz* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the respondent.

CALLAHAN, J. This is the reargument of an appeal from an order of Special Term, Bronx county, denying petitioner's motion for a peremptory order of mandamus after trial of the issues of fact arising on an order for alternative mandamus.

The reargument was directed by order of this court upon a stipulation of the parties after a determination of a former appeal herein by the Court of Appeals. (See *Matter of Small* v. *Moss,* 277 N. Y. 501.)

Pursuant to the stipulation and order for reargument, we now have a supplemental record before us which includes the minutes of the trial of the alternative order of mandamus. The facts and prior proceedings herein are set forth at length in the opinion of the Court of Appeals.

The mandamus sought was one directing the commissioner of licenses to issue a moving picture theatre license to the petitioner. The license was denied on the ground that the erection of a theatre on the site would create a dangerous traffic hazard. The essential questions now to be determined are: (1) Whether the creation of a traffic hazard was a ground which the commissioner might consider in denying a license, and (2) assuming that such ground was one which the commissioner might consider, whether there was sufficient evidence to establish that such a hazard would be created by the erection of a theatre on the site involved.

When the commissioner testified at Trial Term he stated that he would have approved of a theatre across the street, but that because of the unusual condition found on the west side of Riverdale avenue, where the site was located, he deemed it an improper location for a theatre. It thus appears that the sole ground for denying the license is due to the alleged conditions on the west side of Riverdale avenue, at or near the site.

Riverdale avenue is a thoroughfare eighty-one feet in width at the place in question. A narrow side street eighteen feet in width commences at a point close to the site and runs parallel with Riverdale avenue on a ramp or elevated street.

The evidence disclosed that the neighborhood is a sparsely settled one, and that traffic on Riverdale avenue is comparatively light. It further discloses that very few vehicles use the ramp, the number not exceeding twenty in an hour. The ramp serves only a small area. The street on the ramp is currently used by two-way traffic, and it appears clear, considering all the conditions, that many, if not all of the dangers that it is claimed would be created, could

be eliminated, if they actually arose, if the ramp was regulated for one-way traffic.

We are at a loss to understand why any serious traffic problem would arise under the conditions disclosed by the evidence. Undoubtedly the presence of theatres in other parts of New York city commonly present traffic problems of far greater magnitude.

The court at Trial Term, where the issues of fact on the alternative order were tried without a jury, found that there was no proof before the commissioner upon which he could conclude that the erection of a theatre on the site would create traffic conditions dangerous to the public. Despite this finding, Special Term held that the peremptory order should be denied, for the reason that the commissioner's determination was based upon a discretion wisely exercised.

It is our view, upon reading the evidence in the case, that the finding at Trial Term was not against the weight of the evidence. However, we find that there was some evidence in the record to the effect that a traffic problem, if not a danger, would arise after the theatre was erected.

The rule of law applicable to the present situation, in so far as the right of the court to interfere with the administrative discretion of the commissioner, was stated by the Court of Appeals as follows: " The limits of reasonable discretion are transgressed where refusal is based upon a ground which under the statute the licensing officer may not consider or upon a ground which is not supported by any evidence."

Therefore, rather than place our decision on the ground that the exercise of discretion by the commissioner was unwarranted because of the paucity of proof with respect to traffic dangers, we pass to consideration of the initial question, i. e., whether the commissioner had the right to consider the factor of traffic hazards as a basis for the exercise of his discretion.

The statutory provisions defining the powers of the commissioner are found in the New York City Code of Ordinances, chapter 3, article 2, section 33. That section provides that applications for motion picture theatre licenses shall be made to the commissioner of licenses, who shall pass upon the location of the theatre, and upon the character of the applicant for the license, without delay. It further provides that upon the application for the issuance or reissuance of a license for a motion picture theatre, the commissioner shall request the fire department, the department of water supply, gas and electricity, the department of health, and the bureau of buildings in the borough in which such theatre is located, to inspect the same. Said departments and bureau are required to file in the

department of licenses detailed written reports relating to such theatre structure and any dangerous condition existing therein.

It is conceded in this case that no question arises as to the character of the applicant, and that if the commissioner properly rejected the application it was because of the "location" of the theatre.

It is to be noted that the ordinance makes no express reference to the matters that may be considered in connection with the question of "location." It is to be noted also that it provides for no report by the police department, which ordinarily regulates traffic in the city of New York. No other case has been called to our attention in which street traffic conditions were considered as a factor in determining the question whether a theatre was properly located.

It is well known that street traffic is a matter based on factors concerning which changes constantly take place. For instance, in the present case, a large traffic artery was recently opened in the immediate vicinity of the site. Conditions of traffic in a neighborhood would, of course, be altered by the opening of such an artery. It would also be affected by the development of the neighborhood, and the number and kind of buildings which would be erected therein. Many other factors might affect it. It is, of course, subject to regulation which may solve or relieve the problems involved.

If the power to issue an original license would include the right to consider as a factor traffic problems created by a theatre, the commissioner would seem to have a like right with respect to determining whether to reissue or renew licenses for theatres. To permit a license commissioner to say that existing theatres might be denied licenses because of congested traffic conditions that arose in the neighborhood in which they were located, caused perhaps by the very good will of theatre patrons, is, we think, a power which would not have been conferred upon a licensing commissioner without clear statutory provisions. Nor do we believe that such an uncertain factor was intended to be the basis of denial of a new license.

We think that the power to consider the factor of location, under the statute, must be confined to such matters as are inherent in the question of occupancy of a site by a theatre. as distinguished from any other commercial structure.

The site in question is zoned for business. Large business buildings, or other structures creating the presence of traffic problems, might be erected without the necessity of licensing same.

It was not intended that the ordinance impose an additional zoning restriction against the use of property for a theatre. It is our view that the commissioner may consider the " location " of the theatre only in relation to the presence in the neighborhood of other structures, or such matters relating to the uses thereof as might affect the health or safety of theatre patrons.

In view of our construction of the ordinance, we find that the petitioner's application was denied upon a ground which the commissioner might not consider, and a peremptory order of mandamus should have been issued by the Special Term. This decision is based on a review of all of the evidence in the case, as well as the findings made upon the trial and the exceptions to the rulings thereat.

The order of Special Term should be reversed, with twenty dollars costs and disbursements, and a final order directed to be entered.

O'MALLEY, TOWNLEY and GLENNON, JJ., concur; DORE, J., dissents and votes for affirmance.

DORE, J. (dissenting): The Court of Appeals in its opinion on the prior appeal herein said: " The petitioner can succeed only if he establishes a clear legal right to a license. It follows that every allegation which, if proven, would establish or defeat such legal right is material. The Legislature may vest in a licensing officer a measure of discretion in granting or refusing a license. It determines the field of administrative discretion. Into that field the courts may not enter. Refusal to grant a license is arbitrary only when it is not based on a reasonable exercise of the discretion vested in the licensing officer. The limits of reasonable discretion are transgressed where refusal is based upon a ground which under the statute the licensing officer may not consider or upon a ground which is not supported by any evidence. (*Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330.) (*Matter of Small* v. *Moss,* 277 N. Y. 501, 507.) " A reading of the testimony in the record now before the court clearly shows that the commissioner's determination is supported by the preponderance of the evidence.

There is no rational basis for an analogy between the site here in question and the congested theatre district of Broadway and Forty-second street, Manhattan. Cars moving into the latter district are moving into what they know to be a congested area. Drivers of cars coming down Riverdale avenue into this site could not know until they had rounded the curve adjacent to this property that they were coming into the traffic congestion, vehicular

and otherwise, that would undoubtedly be created by locating a theatre at the unique and exceptional location disclosed in this record. On this aspect of the case the question is not whether this court in the first instance exercising its own discretion would have granted or denied the license. The issue is, whether there is any evidence to support the commissioner's exercise of his discretion. As stated by Roscoe Pound, former dean of Harvard Law School, in his recent testimony before a sub-committee of the Senate Judiciary Committee of the United States Senate: " The purpose of judicial review is not to substitute the court for the administration but to insure that the administration is kept within the limit prescribed by the law with respect to power and that its proceedings are in accordance with the processes of law." *

While fully discussing the facts and indicating disagreement with the commissioner's determination, the majority has placed its reversal on the ground that the commissioner had no right whatever to consider the fact that there were traffic hazards as a basis of the exercise of his discretion and emphasizes the fact that no report is required by the police department which ordinarily regulates traffic in the city of New York, whereas reports are required from the fire department and other city departments. That no report is required by the police department is readily understandable since by the terms of the charter the duties formerly performed by the police department with regard to the location of theatres are expressly vested in the commissioner of licenses.

By sections 640 and 641 of the Greater New York Charter (in effect at the time this proceeding was commenced), the commissioner of licenses is vested with the control ot the granting and revoking " of all licenses in relation to theatres and concerts now issued * * * by the police commissioner; " and the said commissioner of licenses is further endowed thereby with all the powers previously exercised " by the police commissioner in relation to theatres and concerts; " and section 641 specifically states that approval or rejection of a license shall in no case depend upon the " consent, approval or recommendation of any other department " of the city.

The New York City Code of Ordinances expressly provided (Chap. 3, art. 2, § 33): " Applications for motion-picture theatre licenses * * * shall be made to the Commissioner of Licenses, who shall pass upon the *location of the theatre* and upon the character of the applicant for the license." (Italics mine.) This mandatory direction of the legislative body with regard to the " location " is

---

* 75th Congress, 3rd Session on S. 3676, a bill to establish a United States Court of Appeals for Administration.

a broad one and the mere fact that there is no reference to the matters that may be considered in connection with the question of " location " is an indication that such body did not intend to restrict it as it is restricted by the determination of the majority. Clearly among the considerations which the commissioner may take into account with regard to locality is the consideration of public safety, as to which the commissioner quite properly stated that he felt in this case a grave responsibility. And there is no warrant whatever for restricting to theatre patrons *only* the consideration of public safety concededly an element the commissioner may properly consider.

As a matter of fact, the record shows that the police department entirely concurs in the conclusion reached by the commissioner that the location of a theatre at this site would create a dangerous traffic hazard. The assistant engineer attached to the chief engineer's office of the police department of the city of New York, an expert in traffic surveys and studies and a completely disinterested witness, not only testified that a theatre at the particular point would constitute a traffic hazard, but gave in detail the facts upon which he based that reasoned conviction, all of which amply supported the commissioner's determination, and it was further stipulated that if called Police Captain Reilly of the traffic precinct would also testify that the erection of a theatre at the proposed site would constitute a traffic hazard.

Defendant made out a clear case of public danger justifying the commissioner's decision within the limits of the discretion which the legislative body granted to him. The order of the Special Term denying the peremptory order of mandamus should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and a final order directed to be entered. Settle order on notice.