In the Matter of FREDERICK SMALL, Respondent, against PAUL MOSS, as Commissioner of Licenses of the City of New York, Appellant.

Argued October 11, 1938; decided December 6, 1938.

*William C. Chanler, Corporation Counsel* (*Alan M. Stroock, Paxton Blair* and *David I. Shivitz* of counsel), for appellant. Since the only disinterested witnesses and the only expert witness called upon the trial testified

that if a theatre were erected at the site traffic conditions would create a danger which mere regulation could not cure, the Commissioner's exercise of discretion, if within his power, cannot be overridden by the courts. (*People ex rel. Lodes* v. *Department of Health*, 189 N. Y. 187; *Matter of Ormsby* v. *Bell*, 218 N. Y. 212; *Message Photo-Play Co.* v. *Bell*, 179 App. Div. 13.) The Commissioner of Licenses has full power under statute and ordinance to deny a motion picture theatre license on the ground that traffic conditions at the site would imperil the public safety. (*Message Photo-Play Co.* v. *Bell*, 179 App. Div. 13; *Matter of Rudhlan Amusement Corp.* v. *Geraghty*, 146 Misc. Rep. 308; *Matter of Armstrong* v. *Murphy*, 65 App. Div. 123; *Matter of Agoglia* v. *Mulrooney*, 259 N. Y. 462; *People ex rel. Moses* v. *Gaynor*, 77 Misc. Rep. 576; 160 App. Div. 881; *Matter of Noeth* v. *Valentine*, 247 App. Div. 807; *People ex rel. Worth* v. *Grant*, 58 Hun, 455; *Matter of Ormsby* v. *Bell*, 218 N. Y. 212; *Matter of Goelet* v. *Moss*, 248 App. Div. 499; 273 N. Y. 503.)

*Israel Hoffman* and *David Steckler* for respondent. There is evidence in the record to sustain the trial court's finding that there was no reasonable basis for the defendant's conclusion that the erection of a theatre at the site would create a traffic hazard. There is, therefore, no error of law in the findings. (*People ex rel. Gleason* v. *Scannell*, 172 N. Y. 316; *Matter of Empire Home Furnishers, Inc.*, v. *White*, 143 Misc. Rep. 285; 235 App. Div. 522; *People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280; *Morgan* v. *United States*, 58 Sup. Ct. Rep. 773; *Matter of Goelet* v. *Moss*, 248 App. Div. 499; 273 N. Y. 503; *New Orleans Public Service, Inc.*, v. *City of New Orleans*, 281 U. S. 682.) The defendant, in the exercise of the licensing power, had no jurisdiction to predicate denial of a theatre license upon the ground that the erection of a theatre would create a traffic

hazard. His denial, therefore, was arbitrary as a matter of law. (*Wallack* v. *Mayor*, 3 Hun, 84; *Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549; *Matter of Buckley* v. *Pugh*, 137 Misc. Rep. 594; *Cherubino* v. *Meenan*, 253 N. Y. 462; *Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330; *Matter of Smith* v. *Morgan*, 253 App._Div. 239.)

LEHMAN, J. The Commissioner of Licenses of the City of New York has denied an application of the petitioner for a license to erect a motion picture theatre upon a plot of ground on Riverdale avenue in the city of New York. Claiming that the Commissioner's refusal was arbitrary, the petitioner applied to the Supreme Court for an order of mandamus directing the Commissioner to grant the license. Defeated at Special Term, the petitioner was successful upon appeal to the Appellate Division.

To promote the general welfare and the public health and safety the Legislature of the State and the Board of Aldermen of the City of New York have adopted statutes and ordinances which regulate the erection and maintenance of theatres. No owner of real property in the city of New York may use his property for a theatre until he has complied with these regulations and has obtained a license from the Commissioner of Licenses. In conferring upon an officer of the city power to grant licenses for theatres, the Legislature has failed to provide, in express terms, any standard or rule which should be applied by the officer in determining whether in a particular case a license should be granted or withheld. By section 1472 of the Charter of the City of New York (Laws of 1897, ch. 378, amd. Laws of 1901, ch. 466) it banned theatrical exhibitions until a license for the place of such exhibitions had been obtained. By section 1473 it conferred upon the Police Department a general power to grant such license and in the following sections it made regulations for the conduct of exhibitions intended, it is

plain, to protect the public decency against outrage and also made provision for the safety of patrons of places of amusement by requiring conspicuous marking of means of exit. By necessary implication, if not by the express terms of the statute, licenses could not be granted to those who violate any provision of the law. Power to refuse on any other ground, if it exists, rests upon implications which are less clear.

By subsequent statute the Legislature decreed that these provisions of the charter were to continue in force only until the Board of Aldermen of the city should pass ordinances regulating these matters. (Laws of 1901, ch. 466, § 3.) Thereafter the Legislature created a Department of Licenses, and all the powers exercised by the Police Commissioner with respect to theatre licenses were transferred to the new department. (Charter of City of New York, §§ 640 and 641; Laws of 1914, ch. 475, as amended by Laws of 1917, ch. 618.) Acting under the powers conferred upon it by law, the Board of Aldermen incorporated in the Code of Ordinances of 1915 provisions for the regulation of theatrical exhibitions and for the exercise by the Commissioner of Licenses of the power to grant licenses. These ordinances, with some additions, were in effect at the time when the petitioner applied for a license. Like the provisions of the charter, these ordinances do not in express terms furnish any rule or standard to be applied by the Commissioner in the exercise of his powers. We shall consider hereafter what rule or standard, if any, may be fairly implied.

A court may in proper case direct an administrative officer to perform a public duty which the law commands peremptorily without leaving any discretion to the officer; it may not limit in any manner a discretion which has been conferred upon a public officer by law. The petitioner has challenged the Commissioner's refusal to grant a license on the ground that denial of the appli-

cation is arbitrary and the court, by an alternative order of mandamus, has required the Commissioner to issue the license or to show cause for its denial. In his return the Commissioner has alleged that proof has been presented that the erection of a theatre at the proposed location would increase the pedestrian and vehicle traffic so as to create a " condition dangerous to the travelling public " and that the " noise, traffic congestion and attendant parking problem resulting from the erection of a theatre at the proposed location would be a serious detriment to the general welfare, public health and safety of the community." The petitioner can obtain a final order only if it appears that no such proof was presented or in the alternative, that the Legislature has failed to confer upon the Commissioner any discretionary power to refuse a license because of traffic conditions, revealed by the evidence presented to him or of which he might take notice.

Findings of fact made after a trial established, unless reversed or modified on appeal, that *no* proof had been presented to the Commissioner " upon which he could conclude, that the erection and maintenance of a theatre upon said site would increase pedestrian and vehicular traffic to such an extent as to create a condition dangerous to the travelling public " and also that there was *no* proof before the Commissioner " upon which he could conclude, that the erection and maintenance of a theatre upon said site would create noise, traffic congestion or any attendant parking problem sufficient to be a detriment to the general welfare, public health and safety of the community." Even assuming that the statute conferred upon the Commissioner power, in his discretion, to refuse a license for the erection and maintenance of a theatre at a location where a theatre would create a traffic condition dangerous to those who used the streets, including the patrons of the theatre, a refusal to grant a license would be arbitrary

where no evidence was presented upon which the Commissioner might base a conclusion that such a dangerous traffic condition would be created. Upon a previous appeal in this proceeding the only question presented was whether the findings supported the conclusion that the refusal was, under such circumstances, arbitrary. The evidence taken at the trial was not part of the record, and the findings were not subject to review. We held that upon the record presented, the court could not pass upon the extent of the discretion vested by law in the Commissioner, for even the widest discretion would not justify a determination which is without *any* reasonable foundation in fact. (*Matter of Small* v. *Moss*, 277 N. Y. 501.)

Upon this appeal the evidence is part of the record and some of the findings of the trial court have been modified by the Appellate Division. Doubtless any new theatre, especially in a sparsely built up district of the city, will cause *some* increase of traffic and a substantial increase in demand for parking space in that neighborhood. Increase of traffic and increase of parking on streets where the increased traffic will pass will, we may assume, cause some increase of traffic hazard. In this case there is some evidence that the physical conditions of the street at the location of the proposed theatre create even now, before any theatre has been erected, a hazard to the vehicles stopping at or passing that location, and if more motor vehicles are attracted to that point more persons will be subjected to that hazard, and perhaps the hazard will be intensified. If the Commissioner is vested with discretion to refuse a license for a theatre at a location where its patrons and others passing that point would be subjected to a traffic hazard perhaps increased by the additional use of the street which, it may be anticipated, will result from the erection of a theatre, then we cannot say that the refusal of a license in this case is arbitrary, though the danger would

perhaps not be great and the court might reach other conclusion if it had the right to substitute its discretion for the discretion vested in the administrative officer. The question then is, as the Appellate Division pointed out, "whether the creation of a traffic hazard was a ground which the commissioner might consider in denying a license." (255 App. Div. 1, 2.)

By the Constitution of the State and by statute, broad power was conferred in local legislation upon the Board of Aldermen and its successor, the Council. By the zoning ordinances the use of real property for particular purposes has been restricted to locations which in the opinion of the body exercising legislative powers are suited for such use. The local legislative body may in proper case have power to prohibit the use of property when in its opinion such use would be detrimental to the public health, safety or welfare, and to consent to the use when in its opinion such use would not cause injury to the public. In such case it exercises a legislative power, and no general standards need be formulated by it which must govern its determination as to when its consent should be granted or withheld. (*Matter of Larkin Co.* v. *Schwab*, 242 N. Y. 330.) We, there, pointed out a distinction between the exercise of the law-making power by a legislative body and the exercise of powers delegated to or conferred upon an administrative officer or board by the legislative body. In the first case discretion may be plenary; in the second case, though the law-making body may confer a measure of discretion, it must at the same time define the limits of that discretion and fix the rules or standards which must govern its exercise. The question before us is not whether the city has power to prohibit the erection and maintenance of a theatre at a location where a traffic danger exists or would be created by a new theatre. The question is not whether the Council might confer such power upon the Police Department or even upon the

Commissioner of Licenses with appropriate directions for its exercise. The question before us is the narrow one: whether in fact such power has been conferred upon the Commissioner.

Certainly there is nothing in the provisions of the charter itself which indicates any intention to confer such power upon the Department of Licenses. A property owner ordinarily has a " right of access from the street to his premises for convenience, pleasure or business." (*Matter of Larkin Co.* v. *Schwab, supra*, p. 338.) He may expect the city to preserve and protect that right by reasonable traffic regulation, by proper street lighting, and even, where practicable, by change of contour of the street. In spite of well-planned and well-executed measures directed to that end, some streets will still be unsuited to heavy traffic, and some points will present peculiar traffic dangers. A legislative policy which would restrict the use of property upon such streets and especially at such points to purposes which would not attract large numbers of automobiles or increase traffic dangers might promote the public welfare; but no such legislative policy has been adopted, and we do not consider now what laws, if any, could validly be enacted to make such a policy effective. At present no law would prevent the erection of a department store, or the maintenance of any other lawful business not requiring a license, at the point where the petitioner wishes to erect a theatre though such business might bring more traffic than a theatre. There is no law which expressly provides that the Commissioner of Licenses may refuse a license for a lawful business which would bring increased traffic and create a traffic danger for travelers on the street. The right of the State to require that in the public interest theatres must be licensed has long been asserted and invariably sustained by the courts, but never on the ground that the traffic brought to a theatre might cause a danger to the public using the street. Traffic problems have become

infinitely more complex since the advent of motor vehicles and we may assume, though only *arguendo*, that now the Legislature might adopt a new legislative policy and confer upon the Commissioner of Licenses the power to determine whether the grant of a license to a theatre at a particular point would create a dangerous traffic condition; but the Commissioner has no power to declare any legislative policy or to create the standards which must govern the grant of a license. He may only apply the policy declared and the rules and standards laid down in statute and ordinance, and we search there in vain for a rule or standard which would justify refusal of a license for the erection of a theatre at a point where street traffic, and especially traffic increased by a new theatre, would subject travelers upon the street to danger.

We are told that by fair implication we may find such rule or standard in the ordinance which provides that " Applications for motion-picture theatre licenses or for open-air motion-picture theatre licenses shall be made to the commissioner of licenses, who shall pass upon the *location* of the theatre and upon the *character of the applicant* for the license without delay. Upon the application for the issue or re-issue of a license for a motion-picture theatre or an open-air motion-picture theatre, the commissioner shall request the *fire department, the department of water supply, gas and electricity, the department of health, and the bureau of buildings in the borough in which such theatre is located,* to inspect the same, and the said departments and the appropriate bureau of buildings shall, within ten days after receiving such requests, file in the department of licenses detailed written reports, which shall include a statement of any violation of law, ordinance, rule or regulation relating to such structure, and any *dangerous condition existing therein.* Upon the failure of any department or bureau to file such report, the commissioner may disregard such department or bureau and, in

his discretion, may issue a license." (Code of Ordinances of the City of New York, ch. 3, art. 2, § 33.) (Italics are ours.)

It is argued that power to "pass upon the location of the theatre" includes power to determine whether the location is one where in the opinion of the Commissioner the erection of a theatre would promote or at least not harm the public welfare and the public safety.

We have already held that the Commissioner may not deny a license for the erection of a theatre because, in the opinion of the Commissioner, a theatre at that *location* would impair the general welfare. (*Matter of Goelet* v. *Moss*, 248 App. Div. 499; affd., 273 N. Y. 503.) We left open the question whether the Commissioner may deny a license because in his opinion a theatre at that location would impair the public safety.

Doubtless the Commissioner may refuse a license for a theatre at a location where a theatre may not *lawfully* be conducted, unless a license *previously issued* for the operation of a dry cleaning establishment in premises adjoining the location of the theatre is revoked. (*Matter of Ormsby* v. *Bell*, 218 N. Y. 212.) A power, indeed a duty, to refuse a license for any dangerous condition existing in the building or at the location where the theatre is to be established, and which comes within the jurisdiction of or violates a rule of the Fire Department, the Department of Water Supply, Gas and Electricity, the Department of Health or the Bureau of Buildings, may be read into the statute by fair implication from the provision for an inspection and report by each of their departments. Neither in these provisions nor in any other provisions in the ordinance or in any statute is there any fair implication that the Commissioner might refuse a license for a theatre at a location where travelers are or would be thereafter exposed to a traffic danger.

This court has repeatedly pointed out that the courts may not invade the field of discretion conferred by law

upon an administrative officer. It has also pointed out that such field of discretion must be defined by the Legislature. The Legislature must set bounds to the field, and must formulate the standards which shall govern the exercise of discretion within the field. Without the second rule as a corollary to the first rule there would be no effective restraint upon unfair discrimination or other arbitrary action by the administrative officer. The law, but not the will of an administrative officer, may reasonably restrict the use of real property. We repeat that the question before us is not whether the city of New York can by law restrain the maintenance of a theatre at a location where the street traffic is or may become dangerous, but is whether by statute or ordinance there has been a legislative declaration of a general policy that no theatre should be erected at such a location, and a delegation to the Commissioner of Licenses of power to determine whether such dangerous condition exists or may be created. The city in effect argues that no restriction upon the discretion of the Commissioner should be read into the statute by implication. We do not read into the statute restrictions upon any power granted in general terms to the Commissioner. We say that no undefined general power has been or could be conferred upon the Commissioner, and neither by express language nor by fair implication has power been conferred upon the Commissioner to withhold a license for a theatre from an applicant of good character, where the proposed theatre at that location would violate no provision of law and no rule or regulation of a department charged with the protection of the health or safety of the people of the city.

The order should be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Order affirmed.