Samuel H. Hofstadter, J.
Petitioner, engaged in the trucking business, brings this article 78 proceeding to review the license commissioner’s denial of its application for- a public cart license. The proceeding is dismissed.
In the form of application prescribed by the commissioner* there was a question: “ State if any * * * have * * * *718 (c) Been arrested or summonsed to court, give details and disposition In its sworn answer, petitioner, through its secretary, Oberyant, stated, ‘ ‘ Harry Oberyant, assault about 1939 or 1940 — dismissed. James Plumeri, convicted of extortion 1937, also other arrests, exact dates unknown.” James Plumeri was listed as treasurer of the corporation. In a hearing held subsequently, Oberyant and Plumeri, each owning 25% of the stock, testified. The latter confirmed a conviction for extortion in 1937, and a sentence from 5 to 10 years’ imprisonment. He further admitted various other arrests with no further convictions, all involving trouble in the garment industry.
The maintenance of right conditions in New York’s great garment industry has required eternal vigilance — not only of public officials but of labor organizations, representing the consummate flowering of trade unionism in our country, and of employer groups of high ethical standards. Despite the efforts of these agencies, some segments of the garment trade have become the spawning grounds for racketeers intent to make an illicit living off this enterprise. These elements sometimes gain a strong foothold in certain sections, and are a continuing threat to the effectiveness of a worker-employer relationship under an enlightened collective bargaining arrangement. At times, violence and intimidation have donned the honorable cloak of unionism for the purpose of betraying it; and in other guises, too, the rise of criminal activity has made the peaceful pursuit of production more difficult.
To combat these evils, in some areas, the law imposes a license system, so as to afford some measure of supervision and regulation. The license authority must examine into the character of the applicant for the protection of public morals. The refusal to grant petitioner’s application rests upon the disqualifications of its officers.
The character and reputation of the officers of the petitioner are decisive elements in the appraisal of the character of the - corporation. Implicit in the requirement of a license, there is not only an authorization but a command to take reasonable steps to see that the applicant is a fit and proper person to engage in the licensed business (Matter of Picone v. Commissioner of Licenses, 241 N.Y. 157, 161; Matter of Small v. Moss, 277 N.Y. 501, 507).
Doubtless, the license commissioner, like other public officials, is aware that the hoodlum empire extends into many territories. And his refusal of a license to this applicant, far from being capricious and unreasonable, is sound and salutary. Must a civilized community continue a tacit acceptance of the infiltration *719 of lawlessness in legitimate business, not as a sporadic phenomenon but as an ordinary incident?
Heretofore, the sway of “ Invisible Government” has been promoted by the apathy of State and local officials and public indifference. Its hidden powers have paralyzed law enforcement ; the cancer of its corruption has undermined the democratic and moral foundations of the community.
The problem which looms so large on our scene does not exist in a vacuum — it is an integral part of the society which we have created. The drive for power and the lust for acquisition that are commonplace in our world, have generated rackets of every variety everywhere. We have become less conscious of them as they become more deeply embedded in the political, commercial and social life of the nation.
There have always been those damaged souls, who, abandoning the accepted behavioral pattern, dipped into the lower strata of society. The converse is now happening. The entire nether world, in expanding degree, is propelling itself into society, permeating it at almost every level and becoming so commingled that practically none escape its taint. Our own city — the symbol of the nation, the seat of its culture and commerce ■— has become rife with violence, a lawless community, its inhabitants no longer safe by night or day or high noon, in their persons, their homes or their property.
The requirement of a license carries with it, by natural implication, a discretion on the part of the commissioner to refuse to grant one (People ex rel. Schwab v. Grant, 126 N. Y. 473, 481); and while it is established that such a licensing officer may not arbitrarily impose limitations not contained in the statute (Matter of Picone v. Commissioner of Licenses, 241 N. Y. 157, 161, supra), or, in other words, may not refuse a license upon a ground which the statute does not authorize him to consider, or a ground which is not supported by any evidence (Matter of Elite Dairy Prods. v. Ten Eyck, 271 N. Y. 488; Matter of Goelet v. Moss, 273 N. Y. 503; Matter of Phipps Estates v. Moss, 273 N. Y. 505; Matter of Small v. Moss, 277 N. Y. 501, 507, supra; Matter of Small v. Moss, 279 N. Y. 288), the rule remains that unless the licensing officer commits an error of law or in some other respect acts arbitrarily or capriciously, his judgment is final and the courts may not interfere (Matter of Ormsby v. Bell, 218 H Y. 212 and other cases cited above).
But, the petitioner urges, that it had acquired a valuable vested property right of which it may not be deprived without due process of law. This is untenable since the business was being conducted unlawfully — such activity can never give rise *720 to any such right. The petitioner has been operating a public carrier business without a license since 1955 contrary to law (violation of the statute is punishable by fine Or imprisonment or both, Administrative Code, § B32-96.0).
Petitioner was incorporated in 1955 to engage in the trucking business. Its trucking service is utilized by many customers in the garment trade. That industry is very large and there is nothing to prevent petitioner from soliciting and accepting business from any and all firms in the industry. The petitioner, therefore, is a public carrier and required a public cart license to operate. By implication, if not by express terms of the statute, there is clear authority to refuse licenses to those who violate the law (Matter of Small v. Moss, 279 N. Y. 288, 292, supra).
Finally, the petitioner argues that its authority to conduct such business, rested upon an exemption given to other ■specifically listed public carriers in the same field from the requirements of the licensing statute by a prior commissioner. Even, assuming the validity of such exemption, the exemption did not apply to this petitioner who was not on the list.
It is manifest that the license commissioner has acted with propriety and within his competence; his action must be Sustained. Accordingly, this proceeding is dismissed.

 Section B32-93.0 of the Administrative Code of the City of New York makes it unlawful to operate a public cart without a license therefor. The commissioner of licenses of the city has charge and control of issuing, transferring, renewing, revoking, suspending and canceling such licenses (City Charter, § 773). Applications therefor must be made to him in such form and detail as he shall prescribe (Administrative Code, § 773a-2.0).