George M. Carney, J.
Plaintiff on May 13, 1966 commenced this action for a declaratory judgment, an injunction and damages. The action consists of two causes of action. Plaintiff in the first cause of action claims that the defendant Authority has refused to grant to it the lower toll rate granted to other users of its facilities and that said refusal is arbitrary, capricious, illegal, discriminatory and unconstitutional, and seeks an injunction restraining the Authority from continuance of its actions. In the second cause of action the plaintiff seeks as money damages the difference between the tolls actually paid by Carey and what the Authority should legally have required it to pay during the period involved. The parties have submitted the controversy upon an agreed statement of facts.
The Authority contends that it has by law the power to make rules and regulations concerning the facilities which it operates, including rules and regulations establishing the tolls to be collected from vehicles using its facilities. It further claims that it was legally justified in excluding airline buses (Carey) from the benefits of the lower toll rate. It points to the toll rule which it established granting a 25-cent toll rate to ‘ ‘ franchise buses engaged in general transportation” and the footnote to its toll rate rule which provides that “ franchise buses engaged in general transportation do not include airline buses or other special purpose buses which may use franchise routes ” (21 NYCRR 251.1). It contends that its own interpretation given to its own rule is entitled to great weight and is controlling in the absence of weighty reasons requiring its rejection. In this instance the Authority contends that there was a perfectly rational, reasonable basis for the rule. It claims that the buses classified as general transportation buses entitled to the lower toll were franchise buses which were serving the general public all along the route of the bus, by picking up and discharging passengers at designated bus stops, whereas the airline buses did not serve the public in this sense and merely picked up passengers at the airline terminal and brought them to Kennedy Airport or La Guardia Airport or transported them from the airport to the terminal and picked up no passengers in between.
Carey Transportation, Inc., is, and was during the period *673 involved, a New York omnibus corporation organized pursuant to articles 1 and 5 of the Transportation Law. It operates two-axle buses. There are three bus routes involved, each having been established pursuant to a franchise granted to Carey by the City of New York, each of which required Carey to transport the public between certain designated points, using certain facilities and routes.
During all of the period involved in this action, one was a route through the Queens Midtown Tunnel, between the East Side Airlines Terminal in Manhattan and the John F. Kennedy International Airport and La Guardia Airport in Queens.
From October 18, 1965 to November 15, 1967 there was a route via the Bronx-Whitestone Bridge, between the George Washington Bridge Bus Station in Manhattan and other points in Manhattan and the Bronx on the one hand and on the other Kennedy and La Guardia Airports (collectively).
The third was a route which from December 13, 1965 to November 5, 1967 required Carey to carry the public by means of the V errazano-N arrows Bridge between points in Richmond and Brooklyn and Kennedy Airport.
Each of the three above routes was established by city franchise which required Carey to transport the public between the points indicated and to use facilities designated, namely, the Queens Midtown Tunnel, Bronx-Whitestone Bridge and the V errazano-N arrows Bridge, respectively.
The defendant Triborough Bridge and Tunnel Authority is a public benefit corporation organized pursuant to article 3 of the Public Authorities Law and operates the Queens-Midtown Tunnel, Bronx-Whitestone Bridge, and the Verrazano-Narrows Bridge. In the operation and maintenance of these facilities it has the power to promulgate reasonable rules and regulations concerning the use of the facilities by vehicles and to establish and collect tolls from vehicles using these facilities.
By letter dated April 28, 1939 the Triborough Bridge Authority granted a permit to North Shore Bus Co. Inc., to use the Bronx-Whitestone Bridge at a toll rate of $.25 per vehicle.
Effective May 1, 1962 the Authority amended its rules and regulations by establishing a toll rate of $.25 per vehicle for the use of the Midtown Twmel and the Bronx-Whitestone Bridge by ‘ ‘ franchise buses where authorized 5 ’ and a higher rate of $.50 per vehicle for buses other than franchise buses. Carey buses were authorized franchised buses.
As of August 3, 1962 the Authority amended its rules and regulations to provide that the toll rate for the Whitestone *674 Bridge and Midtown Tunnel of $.25 shall apply to “ two axle franchise buses engaged in general transportation, where authorized.” At the same time it also established a specific exclusion from the general classification of “franchise buses engaged in general transportation ”, by providing that this classification did not include airline buses or other special purpose buses using franchised routes, which buses were required to pay a charge of $.50 to use those facilities. Carey buses, though franchised, two-axle buses, engaged in transporting the public, were therefore required to pay a toll of $.50 for each vehicle using these Authority facilities, whereas a franchised bus of two axles, performing general transportation functions, according to the Authority’s definition, was only required to pay $.25.
As of April 15, 1963 the Authority amended its rules and regulations with respect to the Ver razano-Narrows Bridge by providing that a franchised two-axle bus engaged in general transportation pay a toll of $.50 and specifically excluded airline buses or other special purpose buses using franchised routes which were required to pay $1 to use the facility. This, of course, required Carey buses to pay $1 to use this facility.
Carey by letters dated August 17, 1964 and January 11, 1966 demanded refunds of the alleged excess tolls paid, and notified the Authority that future tolls were being paid under protest.
It is Carey’s contention that the application to its buses of the higher rates indicated, even though it is a public transportation company required by franchise to use certain facilities and to carry the public between certain designated points, is arbitrary, unreasonable and unconstitutional. Carey therefore seeks a declaration from the court that the higher tolls imposed on Carey are illegal, arbitrary, unreasonable, discriminatory and unconstitutional and an injunction restraining the Authority from collecting any tolls in excess of those found to be legally applicable. In its second cause of action, it seeks damages in the sum of $380,000, with interest, that is the amount of tolls collected from Carey between August 17, 1964 and December 31, 1971 in excess of the claimed legal tolls. Carey has also reserved the right to claim damages to the date of judgment if successful on the first cause of action. By stipulation, the parties agree that the question of damages is to be held in abeyance until after the decision is rendered upon the first cause of action.
Counsel have submitted a stipulation as to the facts and excellent memoranda of law which have been carefully considered by the court.
*675 It is the court’s opinion and it finds that the toll rates required to be paid by Carey during the periods involved herein of $.50 per vehicle as to the Midtown Tunnel and the Whitestone Bridge and the toll of $l .per vehicle as to the Verrazano Bridge were illegal tolls and were unconstitutionally imposed. It is the court’s opinion that the proper legal tolls which should have been imposed are $.25 and $.50 respectively.
The Authority was authorized to fix toll rates applicable to vehicles using its facilities. No guidelines or standards were set up by the Legislature as to the fixation of tolls other than the right to do so. In fixing the toll rates, the Authority was required to do so based upon reasonable classifications of the vehicles using its facilities. Where classifications are made, however, with different tolls applying to each classification, the distinction between the vehicles classified resulting in the different tolls must be based upon some real and substantial distinction bearing a reasonable and just relation to the things in respect to which such classification is imposed (Southern Ry. Co. v. Greene, 216 U. S. 400, 417). In this case, in the court’s opinion, the Authority has failed to comply with this rule of law.
In fixing the toll rates for the use of its facilities mentioned herein, the Authority has made a distinction between ‘ ‘ franchise buses engaged in general transportation where authorized” and “ air line buses and other special interest purpose buses which may use franchised routes ”. As to franchised buses engaged in general transportation, the Authority has fixed a lower toll rate than that fixed for airline bus (Carey) and other special interest purpose buses which may use franchise routes. The lower toll rate fixed for the Midtown Tunnel and WTiitestone Bridge was $.25 and for the Verrazano Bridge $.50. The higher toll rate charged to Carey buses was $.50 for the Tunnel and Whitestone and $1 for the Verrazano Bridge. These rates are, as the court understands, still in effect.
Carey buses, in the court’s opinion, are franchised two-axle buses engaged in general transportation.
It is the contention of the Authority that its passage of the classification and fixation of toll rates mentioned above is not only entitled to great weight but is binding on the court. The court disagrees with this contention. The Authority is not the Legislature and it has only the power and discretion granted to it by the Legislature. It is not a policy making body and, in the court’s opinion, its rates and regulations are binding on the court only when found to be legally effective.
*676 The Authority was created to maintain and operate its facilities. It therefore had the power to impose reasonable tolls for the use of its facilities, to provide funds for the maintenance and upkeep of its facilities and to pay the interest and principal on its outstanding obligations. It had no legal interest in what a bus did after it passed through or over its facility. It was not created to control traffic or to provide for the transportation of persons using buses outside' the confines of the facilities involved. Whether or not a Carey bus picked up passengers in Manhattan or Queens on its way to La Guardia or Kennedy Airport or on its return therefrom was no concern of the Authority. Nor was it in any way related to the operation of the facilities involved. Therefore, in the court’s opinion, the distinction made by the Authority in fixing the toll classifications between general transportation two-axle.d franchised buses which picked up and discharged passengers at designated bus stops along its route, and general transportation franchised two-axled buses of Carey’s which took on the public as passengers at its terminal, passed through or over the facility of the Authority and made no stops until it arrived at its destination, is an arbitrary, unreasonable discrimination and an unconstitutional one (Southern Ry. Co. v. Greene, 216 U. S. 400, supra; Smith v. Cahoon, 283 U. S. 553, 566, 567; Gulf Col. & Santa Fe Ry. v. Ellis, 165 U. S. 150, 153, 155; Matter of Small v. Moss, 279 N. Y. 288, 292, 298).
Judgment is therefore granted to the plantiff on the first cause of action declaring that (a) the franchise bus toll rates of the Authority facilities (lower toll rates) are applicable to the Carey two-axle franchise buses traversing the facilities involved herein pursuant to the franchise contracts and the June 11,1965 resolution in extension thereof, and (b) the Authority’s refusal to so apply the said franchise bus toll lower rates to Carey is illegal, arbitrary, unreasonable, discriminatory and unconstitutional.
It is further declared that the Authority is permanently enjoined and restrained from imposing or collecting or attempting to impose or collect tolls from Carey for the use by Carey two-axle franchised buses of the Authority facilities involved herein at rates in excess of the toll rates of said facilities for use thereof by two-axle franchise buses engaged in general transportation, where authorized.
Pursuant to the stipulation of the parties herein, the second cause of action for damages is held in abeyance.