(November 17, 1981)

█ POLING TRANSPORTATION CORPORATION, Appellant, v A & P TANKER COR-
PORATION et al., Respondents. — In an action, *inter alia,* to compel the
defendants to convey a certain steel tank vessel, named the *"V.L. Keegan, II"*
to plaintiff, on the theory of diversion of corporate opportunity, plaintiff
appeals from an order of the Supreme Court, Richmond County (Sacks, J.),
dated October 15, 1981, which denied its motion for a preliminary injunction,
*pendente lite,* enjoining the defendants from selling or transferring the vessel.
Order reversed, without costs or disbursements, and plaintiff's motion granted
to the extent that the defendants, their agents, servants and employees, and
all persons acting on their behalf, are enjoined from selling or transferring the
vessel *V.L. Keegan, II* to any person or entity other than the plaintiff, on
condition that (1) plaintiff consents to sever the first three causes of action of
its complaint for an immediate trial, no later than December 1, 1981 and (2)
plaintiff, within 10 days after the entry of the order to be made hereon, gives
and files an undertaking with corporate surety in the amount of $250,000 on
terms that if it is finally determined that plaintiff was not entitled to an
injunction it will pay to defendants all damages and costs which may be
sustained by reason of the preliminary injunction. In the event that either of
the conditions are not met, defendants, if so advised, may move for an order
vacating the preliminary injunction. Plaintiff, Poling Transportation Corpora-
tion (Poling), owns, operates and charters barges and steel tank motor vessels
for the transportation of petroleum products and by-products. In the first three
causes of action in its complaint plaintiff seeks to compel the defendants to
convey to it a certain steel tank vessel, the *V.L. Keegan, II (Keegan).* The
individual defendants, two of whom were employees and one an officer of
Poling, purchased the *Keegan* through the A & P Tanker Corporation, which
they formed. It is Poling's position that the individual defendants breached
their fiduciary duties to it by usurping a corporate opportunity. Poling alleges
that defendant Alban, a corporate officer, was requested by its senior manage-
ment to inspect certain vessels in the fleet of the Amerada Hess Corporation
which were available for purchase. Among these vessels was the *Keegan.*
According to Poling, Alban advised it that the *Keegan* was not suitable and
discouraged the acquisition. Soon afterwards Alban and the other defendants
purchased the *Keegan* and offered to lease it to Poling. Plaintiff then com-
menced suit and moved for an order enjoining defendants, *pendente lite,* from
selling or otherwise transferring the *Keegan,* to anyone other than Poling.
Special Term denied the motion, holding that monetary damages would be an
adequate remedy should plaintiff prevail on the merits. We reverse. Pursuant
to CPLR 6301, "A preliminary injunction may be granted *** where it
appears that the defendant threatens or is about to do *** an act in violation
of the plaintiff's rights respecting the subject of the action, and tending to
render the judgment ineffectual". Sale of the *Keegan* during the pendency of
this action would threaten the effectiveness of any judgment obtained by
Poling. Furthermore, the plaintiff has sufficiently demonstrated (1) a likeli-
hood of ultimate success on the merits, (2) irreparable injury absent granting
the preliminary injunction, and (3) that a balancing of equities favors its
position (see *Grant Co. v Srogi,* 52 NY2d 496, 517; *Albini v Solork Assoc.,* 37
AD2d 835). If an officer of a corporation acquires property for himself in which
the corporation had a "tangible expectancy" (see *Blaustein v Pan Amer.
Petroleum & Transp. Co.,* 293 NY 281), then the corporation may insist that
his title was acquired for its benefit, and may require the officer to transfer the

property at his cost (see *New York Trust Co. v American Realty Co.,* 244 NY 209; *Burg v Horn,* 380 F2d 897; *Guth v Loft, Inc.,* 5 A2d 503; 3 Fletcher's Cyclopedia Corporations [perm ed], § 861.1, pp 208-211). The underlying rationale is that corporate officers cannot use their position of trust and confidence to further their private interests *(Guth v Loft, Inc., supra; Volk Co. v Fleschner Bros.,* 60 NYS2d 244; *Litwin v Allen,* 25 NYS2d 667). If plaintiff can establish a diversion of corporate opportunity, the law will impress a constructive trust in favor of the corporation upon the property acquired (see *Guth v Loft, Inc.,* 5 A2d 503, 511, *supra; Burg v Horn, supra).* Although it may be that the doctrine also applies to employees who are not officers since they are similarly bound to exercise good faith in the performance of their duties (see *Hadden v Consolidated Edison Co. of N. Y.,* 45 NY2d 466), it certainly applies here because defendant Alban was an officer of Poling. Under these circumstances, plaintiff has sufficiently demonstrated a reasonable probability of success on the merits (see, e.g., *Tucker v Toia,* 54 AD2d 322). One of the tests of irreparability of injury is whether a litigant can obtain adequate compensation by invoking the legal damage remedy (see *Haulage Enterprises Corp. v Hempstead Resources Corp.,* 74 AD2d 863; 28 NY Jur, Injunctions, § 38). But, the legal remedy must be as complete, practicable and efficient as the equitable one *(Lesron Junior v Feinberg,* 13 AD2d 90, 93). Poling alleges that a vessel of the size and type of the *Keegan* is not ordinarily constructed today and that one cannot be obtained on the secondhand market. Defendants respond that Poling could buy a new vessel matching these specifications which would apparently cost about $4,000,000. The *Keegan* was purchased for $250,000. Poling further alleges that should one of its competitors acquire the *Keegan* the corporation would suffer a competitive disadvantage. We believe that a legal action for damages against these defendants (based on the cost of a new vessel) is impracticable and inefficient, particularly as compared to the equitable one. Moreover, the use of a preliminary injunction is well designed for this type of action (see *O'Hayer v De St. Aubin,* 44 Misc 2d 786, affd 24 AD2d 604). The failure to grant the motion would prevent the court from utilizing the typical remedy in a corporate opportunity suit, i.e., the constructive trust. Additionally, we believe that denial of the motion would be inconsistent with the purposes of this doctrine, namely, to prevent a breach of trust, and to restore to the corporation property which rightfully should belong to it (see *Blaustein v Pan Amer. Petroleum & Transp. Co.,* 293 NY 281, *supra).* Finally, the balancing of equities favors the plaintiff since "the irreparable injury to be sustained by the plaintiff is more burdensome to it than the harm caused to defendant[s] through imposition of the injunction" (see *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 70 AD2d 1021, 1022). Since the promptness of the forthcoming plenary trial is a factor in our determination as to the balance of the equities, we condition the grant of relief to the plaintiff upon its consent to severance of the causes of action relating to the *Keegan* from the numerous other causes contained in the complaint. Pretrial proceedings relating to those additional causes should not delay the trial of the *Keegan* issues. Examination of the parties' affidavits leads us to conclude that the sum of $250,000 would be an appropriate undertaking to be given by the plaintiff (see CPLR 6312, subd [b]). Hopkins, J. P., Damiani, Lazer, Rabin and Cohalan, JJ., concur.