[890 NYS2d 818]

THE BRIGHTONIAN NURSING HOME et al., Plaintiffs, v RICHARD F. DAINES, M.D., as Commissioner of Health of the State of New York, et al., Defendants.

Supreme Court, Monroe County, November 4, 2009

### APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General (J. Richard Benitez* of counsel), for defendants. *Harter Secrest & Emery, LLP (Thomas Smith* and *F. Paul Greene* of counsel), for plaintiffs.

### OPINION OF THE COURT

MATTHEW A. ROSENBAUM, J.

The plaintiffs in this matter are skilled nursing homes and the New York State Health Facilities Association (the homes), individually and on behalf of the Association's residential health care facility members in New York State. Plaintiffs are specifically challenging Public Health Law § 2808 (5) (c) and seek a preliminary injunction enjoining defendants from enforcing paragraph (c). Plaintiffs argue that this section of the Public Health Law imposes a statutory "freeze" on nursing home owners' private bank accounts by requiring that they apply for bureaucratic approval before withdrawal of equity or transfer of assets which cannot exceed in the aggregate three percent of such facility's total Medicaid revenue in the prior calendar year. The value of the equity or assets in each of the provisions referred to in this decision, unless specifically stated otherwise, cannot exceed in the aggregate three percent of such facility's total Medicaid revenue in the prior calendar year.

Plaintiffs point out that under Public Health Law § 2808 (5) (a) *approval* has already been required where an operator would withdraw equity or assets from a hospital operated for profit *so as to create or increase negative net worth or when the hospital is in a negative net worth position.*

Paragraph (b) of Public Health Law § 2808 (5), in force since April 1, 2008, requires prior written *notification* to the Commissioner before any residential health care facility may withdraw equity or transfer assets.

Effective April 1, 2009, the newly added provision (subd [5] [c]) requires prior written approval of the Commissioner for the withdrawal of assets or equity in both for-profit facilities and not-for-profit facilities. The standard set forth in subdivision (5) (c) reads as follows:

> "The commissioner shall make a determination to approve or disapprove a request for withdrawal of

equity or assets under this subdivision within sixty days of the date of the receipt of a written request from the facility. Requests shall be made in a form acceptable to the department by certified or registered mail. In reviewing such requests the commissioner shall consider the facility's overall financial condition, any indications of financial distress, whether the facility is delinquent in any payment owed to the department, whether the facility has been cited for immediate jeopardy or substandard quality of care, *and such other factors as the commissioner deems appropriate.*" (Emphasis added.)

Penalties may be imposed for failure to follow the statute.

All of the homes which are parties to this action are for-profit entities where the percentage of Medicaid patients is smaller than the percentage of Medicare or paying patients. The result is that the owners/operators of these homes can withdraw only a small amount of equity on an annual basis from their accounts without the prior written approval of the Commissioner. They assert that they cannot make tax payments, as the amounts due exceed three percent of such facility's total Medicaid revenue, and they cannot pay operating costs nor amounts due on loans. They are also unable to meet their own personal expenses such as college expenses for their children. Each of the owners stated that their facilities are not and have not been in negative equity situations. Many are family businesses that have been in the family for several generations. The Commissioner also has 60 days within which to reply and can extend the period beyond that time if further information is requested.

Additionally, plaintiffs assert that Medicaid does not cover the cost of maintaining a patient, resulting in losses to each facility, which losses are covered by the revenue derived from the paying patients. Thus, the equity which is restricted is not Medicaid funds.

The homes further allege that they have challenged the actions of the Commissioner in the past and that the effect of the new provision is to stifle such challenges for fear a request to withdraw equity will be denied.

The plaintiffs also object to the lack of standards for making a determination as the Commissioner may consider, among other factors, "the facility's overall financial condition" and "such other factors as the commissioner deems appropriate."

At this point, plaintiffs seek a preliminary injunction. The Appellate Division, Fourth Department, in the recent case of *Destiny USA Holdings, LLC v Citigroup Global Mkts. Realty Corp.* (69 AD3d 212, 216 [2009]) reiterated the requirements for a preliminary injunction:

> "In order to establish its entitlement to a preliminary injunction, the party seeking the injunction must establish, by clear and convincing evidence (*see Network Fin. Planning v Prudential-Bache Sec.,* 194 AD2d 651 [1993]), three separate elements: '(1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor' (*Doe v Axelrod,* 73 NY2d 748, 750 [1988]; *see J. A. Preston Corp. v Fabrication Enters.,* 68 NY2d 397, 406 [1986]; *Miller v Powers,* 30 AD3d 1060, 1061 [2006])."

The Court continued: "Entitlement to a preliminary injunction 'depends upon probabilities, any or all of which may be disproven when the action is tried on the merits' " (69 AD3d at 216 [citation omitted]).

Preliminarily, pursuant to the decision in the *Destiny* case, the burden of proof of the party seeking the preliminary injunction is not "beyond a reasonable doubt" but rather as set forth by the Appellate Division, Fourth Department, "by clear and convincing evidence."

Petitioners argue that they are likely to succeed on the merits on the grounds that Public Health Law § 2808 (5) (c) is violative of both the New York State and United States Constitutions on the following grounds:

(1) it is an improper delegation of legislative authority;

(2) it is void for vagueness;

(3) there is a failure to ensure due process;

(4) there is a failure to ensure substantive due process;

(5) there is a failure to ensure equal protection; and

(6) the statute creates impairment of contractual obligations.

Again, the factors the Commissioner is required to consider are:

(1) the facility's overall financial condition;

(2) any indications of financial distress;

(3) whether the facility is delinquent in any payment owed to the department;

(4) whether the facility has been cited for immediate jeopardy or substandard quality of care; and

(5) such other factors as the Commissioner deems appropriate.

Plaintiff contends that the language which allows the Commissioner to approve or disapprove a request for withdrawal of equity or assets based on "such other factors as the commissioner deems appropriate" is an improper delegation of the Legislature's authority. "A reasonable amount of discretion may be delegated to an administrative official, but not an unreasonable and wholly unrealistic and unlimited amount." (*City of Tonawanda v Tonawanda Theater Corp.*, 29 AD2d 217, 221 [4th Dept 1968] [citations omitted].)

Defendants respond that the Legislature can lawfully delegate broad authority to agencies, citing the case of *Boreali v Axelrod* (71 NY2d 1 [1987]), leaving the agency to develop rules and regulations. However, the Court in *Packer Coll. Inst. v University of State of N.Y.* (298 NY 184, 189 [1948]) stated:

> "Only the wildest guessing could give us any idea of what the Legislature had in mind. Surely this does not meet the test of *Matter of Small v. Moss* (279 N. Y. 288, 299): 'The Legislature must set bounds to the field, and must formulate the standards which shall govern the exercise of discretion within the field. Without the second rule as a corollary to the first rule there would be no effective restraint upon unfair discrimination or other arbitrary action by the administrative officer.' "

In the within situation there is no way to know what would constitute "such other factors as the commissioner deems appropriate."

Defendants argue that the language in question could be stricken by the court and the remainder of the provision allowed to stand, effectively stating that this court could legislate from the bench. However, plaintiffs challenge that assertion. Removal of the offending language does nothing to correct the additional issues with the legislation, according to plaintiffs, who assert that the three percent threshold is irrational as there is no basis for the disparate effects and therefore it fails to provide equal protection. Plaintiffs further state that the three percent threshold does nothing to increase the provision of Medicaid services nor for the need to improve access for Medicaid recipients. Plaintiffs also quote the statement in de-

fendants' papers where they state "that there is no correlation between Medicaid utilization and the equity in a facility."

Finally, if it is the intent of the Legislature that a nursing facility remain fiscally sound, the provision in Public Health Law § 2808 (5) (a) already requires approval of the Commissioner for equity withdrawals which would "create or increase a negative net worth or when the hospital is in a negative net worth position."

Plaintiffs have demonstrated a likelihood of ultimate success on the merits.

To meet the second prong to obtain a preliminary injunction, plaintiffs assert that they will suffer irreparable harm if the preliminary injunction is not granted. The harm includes the detrimental effect on an owner's ability to secure credit at market rates, opportunity loss as capital cannot be accessed without approval, as well as tax penalties and possible foreclosure to the extent that the owners cannot access equity to pay taxes. There would be no way to access equity in the event of an emergency as well.

Defendants respond that these arguments are speculative at best. Plaintiffs have not identified any use of the challenged authority nor any abuse of the Commissioner's authority. In the case of *Washington State Grange v Washington State Republican Party* (552 US 442, 449-450 [2008]) the Court stated: "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."

To support their position, plaintiffs have included in their moving papers an affidavit from David F. Perry, president of Century Health Capital, Inc., a company which specializes in providing capital financing services to those engaged in the health care industry, including skilled nursing and senior living facilities. He states:

> "Where such borrower's pledge of collateral is restricted so as to impair Century's ability to immediately and readily access such assets in the event of a default or dishonor of the loan agreement, Century will be at greater risk in granting such financing.
>
> "As a result, the ability of that owner to obtain a loan for a business expansion, renovation, acquisition, etc. will be severely impaired, if not prevented,

by the restricted collateral." (Perry affidavit ¶¶ 10, 11.)

The affidavit of Lana Earle, director of the Bureau of Long Term Care Reimbursement, references the requests for equity withdrawals and states that funds expended by the nursing home for construction, renovation, expansion, purchases of equipment for the nursing home or to pay the facility's taxes are not equity withdrawals. However, she goes on to state that where a nursing home is a partnership or subchapter-S corporation, the Bureau, without regard to the facility's equity, approved withdrawals to make tax payments "to the extent the taxes were attributable to the nursing home and were not the result of taxes due to other income not related to the nursing home." (Affidavit ¶ 23.) That statement alone illustrates the plaintiffs' argument that they are not able to pay taxes when due, as the Commissioner has only approved that portion of an equity withdrawal directly attributable to the nursing home only.

Finally, plaintiffs refer to the chilling effect the provision has on their ability to challenge the decisions of the Commissioner or to support political activities that may be contrary to the Commissioner's positions. Given the way the provision reads, they fear that a request for an equity withdrawal can be denied based on their activities. Although defendants deny that would ever happen, the provision has created a situation where it could.

Thus, the plaintiffs have established that they will suffer irreparable harm should the preliminary injunction not be granted.

The third prong necessary to grant a preliminary injunction is "a balance of equities tipping in the moving party's favor."

The Court in *Price Paper & Twine Co. v Miller* (182 AD2d 748, 749 [2d Dept 1992]) stated:

"Where, as here, a litigant can fully be recompensed by a monetary award, a preliminary injunction will not issue. Further, where it is demonstrated, as here, that the defendants would be likely to suffer more damage than the plaintiffs, a preliminary injunction should not be issued (*see, Poling Transp. Corp. v A&P Tanker Corp.*, 84 AD2d 796)."

Should plaintiffs succeed, a monetary award is not likely adequate compensation for the opportunities lost, the restriction on their personal funds, and the ability to spend them as they

wish. And as already stated, defendants' interest is protected by Public Health Law § 2808 (5) (a).

Plaintiffs are therefore granted a preliminary injunction. Defendants' motion to dismiss is denied.