Chief Judge Breitel.
 

 In proceedings brought by an insurance carrier and two claims service bureaus to review determinations of the Workmen’s Compensation Board, petitioners appeal (CPLR art. 78). The board had denied them licenses to represent self-insurers. The issue, on this joint appeal, is whether an insurance carrier or a controlled subsidiary or affiliate may represent self-insurers before the board.
 

 The Supreme Court, New York County, annulled the board’s determinations and directed issuance of the licenses. The Appellate Division unanimously reversed rand dismissed the petitions.
 

 The orders of the Appellate Division should be affirmed.
 

 Under the board’s rules the representation of self-insurers is properly limited to licensees who must exclusively represent self-insurers. Thus such licensed claims representatives may not also represent carriers before the board. A fortiori, a licensed representative of a self-insurer may not be a carrier or a controlled subsidiary or affiliate.
 

 
 *496
 
 Petitioner Employers Claim Control Service Corporation is a wholly-owned subsidiary' of National Loss Control Service Corporation, an Illinois corporation, and implicitly admitted affiliation with an insurer: Petitioner Consolidated Claims, Limited is a' wholly-owned. subsidiary of Consolidated Mutual Insurance Co. Petitioner Utica Mutual Insurance Company and Consolidated Mutual Insurance Company are New York fire and casualty insurance companies, each of which writes workmen’s compensation insurance.
 

 Consolidated Claims and Utica Mutual each applied to the Workmen’s Compensation Board for licenses to represent self-insurers on compensation claims before the board. On January 10, 1972,- the board unanimously denied both applications, adopting and following a comprehensive report by a committee -of the board.
 

 After a public hearing, the committee had concluded,
 
 inter alia,
 
 that insurance carriers or their subsidiaries could not comply with the Rules -of Conduct for Licensed Representatives, namely, that licensees authorized to represent self-insurers must limit their practice to the representation of self-insurers. Thereafter, ¡on March 21, 1972, the board also denied Employers -Claim Control Service’s license application, citing board policy Us established in the Utica Mutual and Consolidated Claims matter.
 

 Subdivision 3-b of section 50 of the Workmen’s Compensation Law -authorizes the board to issue, in accordance with its rules, licenses to nonlawyers wishing to represent-self-insurers, and it may require ‘‘ such proof of character and fitness as it may deem necessary”. Another part of the statute authorizes the board generally to adopt
 
 “
 
 reasonable rules consistent with and supplemental to the provisions of this chapter and the labor law ” (§ 117).
 

 Purportedly adopted under the board’s statutory - authority, a board rule provides ¡that
 
 “
 
 [1] icensees authorized to represent self-insurers shall limit their practice to the representation of self-insurers ’ ’ (12 NYCRR 302-1.1 [c]). Applicants do not in this court challenge the validity of the rule. They contend, however, that the -board’s denial of the applications was arbitrary and capricious and constituted an abuse of discretion (see CPLR 7803, subd. 3).
 

 
 *497
 
 The Legislature ¡may ¡delegate to a licensing body the power to exercise discretion with respect to the qualifications of licensees. True, the delegation must be accompanied by standards (see
 
 Packer Collegiate Inst.
 
 v.
 
 University of State of N. Y.,
 
 298 N. Y. 184,. 190;
 
 Matter of Barton Trucking Corp.
 
 v.
 
 O’Connell,
 
 7 A D 2d 36, 38, revd. on other grounds 7 N Y 2d 299). The Legislature, however, is not required to specify details, but -fieed only provide a general guide for the licensing body (see
 
 Matter of Elite Dairy Prods.
 
 v.
 
 Ten Eyck,
 
 271 N. Y. 488, 495-496). Thus, under a general standard of “fitness” it has been held that an administrative agency may determine an applicant’s “fitness” for a particular occupation (see
 
 Matter of Mandel
 
 v.
 
 Board of Regents,
 
 250 N. Y. 173, 175, 177).
 

 The board’s provision for .the exclusive representation of self-insurers is not contested' in this court, and, in any event, is a proper exercise of its rulemaking power. It may therefore bar a license to one who could not conform to the rule of exclusive representation, that is,'would not qualify .as “fit” to engage in the licensed activity (see Workmen’s Compensation Law, § 50, subd. 3-b).
 

 Petitioners would avoid the effect of the rule for exclusive representation of self-insurers by arguing that particular agents of petitioners would handle claims .against the self-insurers exclusively. This .argument, however, flies in the face of the rule and the reasons for its promulgation.
 

 The committee report demonstrated that functions of coverage and claims satisfaction under the Workmen’s Compensation Law are best performed by exclusively separated insurers, namely, private carriers, the State Insurance Fund, and self-insurers. These three categories of insurers are competitive with one another, and to avoid conflicts of interest, an independent licensed representative of .self-insurers may not be retained to represent a carrier, as the rule plainly provides. It follows therefore that a carrier may not itself be licensed to represent a self-insurer.
 

 Parallel reasoning applies to a subsidiary or affiliate controlled by a private, carrier. Otherwise that would be permitted to be done indirectly what is forbidden to be done directly.
 

 
 *498
 
 The technique of upiercing ,the corporate veil”, or, in the words of the board, the principle that
 
 ‘ ‘
 
 that which cannot be done directly may not .be achieved by indirection ”, is a commonplace in the law (see
 
 Walkovszky
 
 v.
 
 Carlton,
 
 18 N Y 2d 414, 417-418;
 
 Matter of Iroquois Gas Corp.
 
 v.
 
 Maltbie,
 
 251 App. Div. 528, 529, affd. 279 N. Y. 575; see, generally, Disregarding Corporate Entity, Ann., 46 ALR 3d 428, 430-431; Corporate Liability — Subsidiary, Ann., 38 ALR 3d 1102, 1112; Corporations — Torts of Subsidiary, Ann., 7 ALR 3d 1343, 1349). In the
 
 Iroquois Gas
 
 ease, it was succinctly stated that 1 ‘ Separate corporations, with common stock ownership, should not be treated as individual entities if thereby reasonable regulation is hampered ” (251 App. Div., at p. 529).
 

 The board was, therefore, justified in holding that the rule may not be circumvented by the transparent expedient of nsing a controlled subsidiary or affiliate -of ¡an insurance carrier to practice as a representative of self-insurers.
 

 (Moreover, the use of nonlawyers to represent employers is a departure from the general policy that corporate representation must be, by lawyers [cf., e.g., CPLB 321, subd. (.a)]. Such a departure should ¡always be cautiously controlled to avoid the dangers inherent in representation by those without legal training or professional discipline and standards [see
 
 In re Unauthorized Practice of Law,
 
 175 Ohio St. 149, in which the Supreme Court of Ohio held practice by nonlawyers before the Industrial Commission to be unauthorized practice of law, notwithstanding the commission’s statutory authority to determine ¡by rule the qualifications of those who may practice before it and before the Bureau of Workmen’s Compensation; see, generally, Practice of Law — Compensation Claim, Ann., 2 ALR 3d 724, 726-727].)
 

 In addition, and most important, the board was entitled to conclude that the mixing of carriers and self-insurers, offering competitive alternatives to satisfying the Workmen’s Comr pensation Law, was injurious to the public interest, the employers, and the protected employees. That the mixing waé to occur only at the level of servicing claims does not minimize, but enhances the risk cf conflicts cf interest. Indeed, it is difficult to comprehend why insurers should' foster a service which would or should increase the growth of sélf-insurance.
 

 
 *499
 
 The authority for denial of ia license was formulated in
 
 Matter of Elite Dairy Prods,
 
 v.
 
 Ten Eyck: “
 
 A determination of the 'Commissioner which denies to an applicant a license to 'engage in business may be .reviewed by the courts. The determination may be annulled where it does not 'appear that it is based soundly upon a ground for which the applicant may, in accordance with law, be excluded from engaging in a business which would, otherwise, be lawful. Before a court may direct that a license shall be issued, it must appear, ,as a matter of law, that
 
 no
 
 valid ground exists for its denial” (271 N. Y. 488, 493,
 
 supra
 
 [emphasis in original]; see, also,
 
 Matter of Barton Trucking Corp.
 
 v.
 
 O’Connell,
 
 7 N Y 2d 299, 308, supra; cf.
 
 Matter of Fink
 
 v.
 
 Cole,
 
 1 N Y 2d 48, 53;
 
 Matter of Small
 
 v.
 
 Moss,
 
 279 N. Y. 288, 293-294).
 

 Hence, denial of the licenses under the board’s rule for exclusive representation of self-insurers may be set aside only if it appears that there was no valid ground for denial. But the contrary was here shown to be the case.
 

 Accordingly, the orders of the Appellate Division should be affirmed, with costs.
 

 Judges Jasen, Gabrlelli, Jones, Wachtler and Rabin concur; Judge Stevens taking no part.
 

 In each case: Order affirmed.