In the Matter of GERALD LEVINE, Doing Business as WESTMERE CONVALESCENT HOME, Petitioner, v ROBERT P. WHALEN, as Commissioner of Health, Respondent.

Third Department, January 22, 1976

*Richard C. Johnson* for petitioner.

*Louis J. Lefkowitz, Attorney-General (John M. Dufur* and *Ruth Kessler Toch* of counsel), for respondent.

*O'Connell & Aronowitz (Cornelius D. Murray* of counsel), on behalf of Health Facilities Assn, Inc., *amicus curiae.*

KANE, J. Since 1951, petitioner has been operating a nursing home at Guilderland, New York, pursuant to certification by the State. On May 28, 1974 he received notice that a hearing was to be held to determine whether his hospital operating certificate should be revoked for violation of article 28 of the Public Health Law and the regulations promulgated thereunder (10 NYCRR Parts 702, 711, 713, 730, 731), the most serious of which concerned alleged structural defects relating to fire safety. In his answer to the notice of hearing opposing the statement of charges, petitioner also sought certain modifications or exceptions from the requirements imposed by the regulations (10 NYCRR 711.1 [c]). The hearing was concluded on November 7, 1974, following which the hearing officer found evidence sufficient to support revocation of petitioner's operating certificate and concomitantly denied his alternative requests. The respondent commissioner adopted the findings and conclusions of the hearing officer and, by order dated March 27, 1975, revoked petitioner's operating certificate and directed a cessation of his operations prior to June 1, 1975. This proceeding ensued challenging article 28 of the Public Health Law as an unconstitutional delegation of legislative prerogative under section 1 of article III of the New York State Constitution.

While a proceeding under CPLR article 78 is not ordinarily the proper vehicle to test the constitutionality of a legislative enactment, there is ample authority for the conversion of such a proceeding to an action requesting declaratory judgment *(Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse,* 35 NY2d 534; *Matter of Overhill Bldg. Co. v Delany,* 28 NY2d 449; CPLR 103, subd [c]).

We have briefly touched upon the issue of mandated compliance with the Life Safety Code by nursing homes on other occasions. *Maxwell v Wyman* (458 F2d 1146) dispelled the erroneous notion then held by the Department of Social Services that it could not waive any failure of nursing homes to comply with provisions of the Life Safety Code as a matter of Federal regulation pertaining to the disbursement of Medicaid funds (pp 1149, 1150). Following hearings dictated by that decision, we were called upon to decide whether substantial evidence supported determinations of that agency which denied waivers of strict code compliance to certain nursing

homes (cf. *Matter of Maxwell v Lavine,* 41 AD2d 346, with *Matter of Trumbull v Lavine,* 41 AD2d 349). Now it is the Department of Health which seeks to revoke the operating certificate of a nursing home by refusing modification of, or exception to, its regulations related to the same code. This time, however, the petitioning nursing home broadly challenges the New York statutory authority upon which the present State agency relies to justify its actions.

The safety of housing for those requiring hospitalization or long-term care is certainly a matter of proper concern for the Legislature and that body may, without doubt, invest an administrative officer or agency with a measure of discretion to carry out its wishes in that field. The question here is whether the law-making body has properly accomplished that objective so as to sanction the instant determination. Section 2800 of the Public Health Law plainly purports to empower the Department of Health with the responsibility to develop and then to administer the policy of this State with respect to hospital and related services. In reciting that the purpose of that grant is "to provide for the protection and promotion of the health of the inhabitants of the state", the Legislature has not set any standard; outlined any policy; or announced any intelligible principle by which the Department's exercise of discretion in the field may be measured. It has merely repeated the language of our Constitution on this subject by which the people have charged and entrusted the Legislature to act (NY Const, art XVII, § 3).

We do not hold that other provisions of article 28 of the Public Health Law are invalid or that the Department of Health is without power to adopt and enforce regulations on matters properly within its jurisdiction, yet the department should not be permitted to rely on section 2800 of that law as conferring an all-encompassing authority to regulate the physical safety of nursing homes according to whatever self-developed policy it thinks best. It is exclusively a function of the Legislature to formulate that policy in the first instance *(Matter of Barton Trucking Corp. v O'Connell,* 7 AD2d 36, revd on other grounds 7 NY2d 299), and here the law-making body has attempted to delegate that function to an administrative agency without restriction. The "fit and adequate" language of sections 2803 and 2805 of the Public Health Law supplies no standard guiding the exercise of respondent's discretion as it did in *Matter of Employers Claim Control*

*Serv. Corp. v Workmen's Compensation Bd. of State of N.Y.* (35 NY2d 492), and *Matter of Mandel v Board of Regents* (250 NY 173), for in those cases the court was concerned with the discretion to issue licenses, not to revoke them. More importantly, it does not appear that in either of those decisions the responsible agency possessed a limitless authority to make policy. Once issued, the requisite operating certificate here involved may be revoked only on proof of failure to comply with the provisions of article 28 of the Public Health Law or rules and regulations promulgated thereunder (Public Health Law, § 2806, subd 1). Petitioner has admittedly been the holder of such a certificate for a number of years and it is obvious that respondent is not relying upon any violation of the pertinent article to revoke that certificate, but is acting instead pursuant to the regulations adopted by virtue of authority assumed under section 2800 of the Public Health Law. Simply put, "fit and adequate" provides no guidance on the question of revocation when the agency charged with responsibility in the matter is completely free to determine for itself what that standard will be at any given time. It is well to remember that "Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be." *(Matter of Picone v Commissioner of Licenses,* 241 NY 157, 162,)

Accordingly, we are compelled to conclude that the Legislature has failed to enact valid laws adequately governing the subject of structural requirements for nursing homes, as it might have done, and has left to the Department of Health such broad powers to create, modify, apply, exact and enforce whatever standards respondent believes necessary as to constitute an unconstitutional delegation of its own authority (cf. *Matter of Lyons v Prince,* 281 NY 557; *Matter of Seignious v Rice,* 273 NY 44).

Assuming, *arguendo,* that respondent could validly prescribe construction standards for nursing homes under article 28 of the Public Health Law, the regulations adopted for that purpose are so vague, confusing and meaningless as to be arbitrary and unreasonable. It is argued that the regulations pertaining to construction standards form a comprehensive scheme, but it seems clear to us that any such comprehensiveness attaches only after those regulations are read in light of the interpretation placed upon them by the very administra-

tive agency which drafted them in the first place. This hardly informs a party subject to their effect of what is expected of him and unfairly places him at the mercy of whatever unannounced interpretation then happens to be in favor within that agency.

Section 711.5, contained in Part 711 of the regulations dealing with general standards of construction, is entitled "Structure, equipment and safety of existing nursing homes." It provides that "[E]xisting nursing homes shall meet the standards of construction of this Subchapter unless a modification of, or an exception to, such standards is granted pursuant to section 711.1 of this Part" (10 NYCRR 711.5). Almost every "standard" thereafter mentioned "shall be determined by the department" or is coupled with language that "the department may permit" an alternative to the norm. Significantly, this section also plainly states that "[T]he department may determine that fire resistive construction is not required" (10 NYCRR 711.5 [b] [2]). Yet if one takes the introductory language of that section seriously and peruses the remaining Subchapter standards diligently, it is discovered that fire-resistive construction is required after all (10 NYCRR 713.16; 712.22). Although this regulation is but one example of ambiguity, section 711.1 authorizing modifications of and exceptions to whatever is contained in the Subchapter is also open to the same now-you-see-it, now-you-don't interpretation (cf. 10 NYCRR 711.1 [b] with 711.1 [c]). All that is reasonably certain is that compliance with pertinent provisions of the Life Safety Code constitutes prima facie compliance with the requirements of medical facility construction and equipment *projects* (10 NYCRR 711.2 [a]). How that code stretches to apply to *existing facilities* is not made clear from any of the various regulations, but apply it does according to respondent. The entire proceeding to revoke petitioner's operating certificate was permeated with conflicting proof on whether that code set an acceptable guideline by which to measure whether the health or safety of petitioner's inhabitants was being adversely affected. However beneficial that code may be, respondent's own regulations, as then written, did not mandate that it be satisfied by existing nursing homes. It is plain from a reading of the entire record that respondent considered code compliance a prerequisite to petitioner's continued operation and paid only lip service to the possibility of an exception to or modification of its wholly inept regulatory pattern.

Respondent's good intentions are not to be doubted, and the care and safety of nursing home residents, particularly in regard to fire protection, is certainly a topic of utmost public concern. Nevertheless, this proceeding illustrates the dangers which may attach when an otherwise responsible agency is left undirected by the Legislature. Vague and meaningless regulations are promulgated, interpreted and applied by the same agency which then presides as the prosecutor, Judge and jury over a governmental web impossible for any regulated party to escape. Subsequent statutory and regulatory changes may have alleviated this situation, but that issue is not presently before us. We simply cannot sanction the plain abuse of administrative power displayed in this proceeding.

The determination should be annulled, with costs to petitioner, and judgment should be directed to be entered declaring section 2800 of the Public Health Law unconstitutional, and the matter remitted for further proceedings not inconsistent herewith. The motion should be denied as academic, without costs.

HERLIHY, P. J. (concurring). I agree with the conclusion of Mr. Justice KANE that insofar as section 2800 of the Public Health Law is concerned, any reliance by the respondent thereon as authority for the promulgation of regulations would be unconstitutional. It seems apparent that rather than attempting to restrict the broad delegation of power as to policy contained in section 2800, the appropriate judicial action for the protection of the Constitution is to declare section 2800 unconstitutional. Such action will ensure that the Legislature will fully consider the drastic impact that this exercise of the police power will have upon nursing homes that have heretofore been legally and validly operated pursuant to the licensing scheme. It should be observed that the refusal to continue the license of such nursing homes not only affects the pocketbook of the owner thereof, but also casts the patients thereof into new surroundings at times when stability in such regard is presumably important. Furthermore, it must be publicly understood that the closing of older facilities is in fact an economic advantage to the owners of newly constructed facilities as such a procedure helps ensure clients by movement of the patients out of the closed facilities. Additionally, the economic impact upon the public and the social service agency would be of serious consequence.

In sum, far more is at stake than the laudable desire to

house patients in the best possible facilities in terms of fire protection. At present, the Legislature has not duly enacted an exercise of the police power which would close these pre-existing nursing homes for a failure to utilize construction procedures not previously required or perhaps not even previously possible.

It is also my opinion that the regulations themselves do not require compliance with the Life Safety Code and, accordingly, the determination is arbitrary and capricious since the reliance was entirely upon mandatory compliance or at best upon impossible alternatives. From this record it appears that there are numerous methods available to reasonably protect the patients against danger from fires.

For these reasons I agree with the conclusion of Mr. Justice KANE that the determination should be annulled, and the matter remitted for further proceedings.

LARKIN, J. (dissenting). I dissent. The majority holds that section 2800 of the Public Health Law constitutes an impermissible delegation of legislative power to the Department of Health and provides insufficient guidelines to determine the outer bounds of the department's powers. The section provides that: "Hospital and related services including health-related service of the highest quality, effectively provided and properly utilized at a reasonable cost, are of vital concern to the public health. In order to provide for the protection and promotion of the health of the inhabitants of the state * * * the department of health shall have the central, comprehensive responsibility for the development and administration of the state's policy with respect to hospital and related services" (Public Health Law, § 2800). In my opinion there is no valid constitutional objection to such language.

"It is a well-established principle of administrative law that to prevent an unlawful delegation of power, it is incumbent upon the legislative authority to set forth standards to indicate to the agency the limits of its power, the specificity of the standards being relative to the nature of the program" (Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 276). Section 2800 of the Public Health Law directs that the policy of this State in the area of hospitals and related services is "to provide for the protection and promotion of the health of the inhabitants of the state". In an area of similar complexity, and incidentally involving similar issues of due process, the general purposes of zoning ordinances to

promote the public health, safety, morals and general welfare have been held to furnish sufficient norms to be followed by zoning boards of appeals in determining whether a certain use should be permitted in a specific area *(Matter of Aloe v Dassler,* 278 App Div 975, affd 303 NY 878). In the field of the regulation of the harness racing industry, enabling legislation providing the State Harness Racing Commission with authority to issue licenses only when satisfied that the "public interest, convenience or necessity" would be served and that the issuance of the license would be in the "best interests of racing generally" was held to provide sufficient standards to the commission *(Matter of Sullivan County Harness Racing Assn. v Glasser, supra).* Accordingly, the direction, contained in section 2800 of the Public Health Law, to the Department of Health to develop and administer the policy stated therein by the Legislature is a proper delegation of authority.

The majority also concludes that the Legislature has established insufficient guidelines for the Department of Health regarding the structural fire safety measures which are primarily in issue herein. I disagree. Subdivision (a) of section 2806 of the Public Health Law provides that a hospital operating certificate may be revoked by the commissioner on proof that "the hospital has failed to comply with the provisions of this article or rules and regulations promulgated thereunder". The only language in article 28 that concerns the specific issues presented in this case is contained in paragraph (b) of subdivision 2 of section 2805 of the Public Health Law which provides that "[a]n operating certificate shall not be issued by the department unless it finds that the premises, equipment * * * are fit and adequate". In an analogous situation, our courts have consistently held that under a general standard of "fitness" an administrative agency may determine a person's fitness for a particular occupation in connection with a license application *(Matter of Employers Claim Control Serv. Corp. v Workmen's Compensation Bd. of State of N. Y.,* 35 NY2d 492; *Matter of Mandel v Board of Regents,* 250 NY 173). I see no reason to require more detailed standards to guide an administrative agency in determining whether a building, as opposed to a person applying for a license, is fit or adequate.

Under section 2806 of the Public Health Law no hospital operating certificate may be revoked without a hearing. A copy of the charges and a notice of the time and place of the hearing must be served upon the hospital at least 21 days

before the hearing date, with all orders and determinations subject to review pursuant to CPLR article 78. These procedural safeguards were adhered to in the instant case and not only provide support for upholding the sufficiency of the standards for administrative action contained in article 28 of the Public Health Law (1 NY Jur, Administrative Law, § 53), but also meet the argument presented that petitioner has been deprived of his property without due process of law (id., § 123 et seq.).

The majority further finds that the regulations adopted for the purpose of prescribing construction standards under article 28 of the Public Health Law "are so vague, confusing and meaningless as to be arbitrary and unreasonable". A brief description of the regulatory scheme set forth in the Hospital Code as to standards of construction at the time of the determination refutes this conclusion (substantial revision of the provisions of Chapter V of the State Hospital Code [10 NYCRR Part 700 et seq.], eff Oct. 1, 1975, has been made since the date of the determination herein). Part 711 entitled "General Standards of Construction" was applicable to all medical facilities, including nursing homes (10 NYCRR 700.2 [a] [9]). Section 711.1 provided a three-step method for compliance with the State Hospital Code by nursing homes. A facility must first have complied with Part 713, which set forth the specific standards of construction for nursing homes (10 NYCRR 711.1 [a]). If compliance with Part 713 was impossible, the commissioner could have modified the provisions thereof within the limits of section 711.5 (10 NYCRR 711.1 [b]) which pertained to existing nursing homes. If compliance was still not possible, the commissioner could have, under certain circumstances, granted an exception to the above requirements (10 NYCRR 711.1 [c]). In addition, section 711.2 (10 NYCRR 711.2) sets forth pertinent technical standards, making compliance with certain listed national codes prima facie evidence of compliance with that section. The first of the 11 national codes listed was the Life Safety Code.

In my opinion this comprehensive scheme, containing several alternative means by which petitioner could comply with the standards of the Department of Health, in view of the provisions for review contained in section 2806 of the Public Health Law, provided petitioner with adequate protection against the deprivation of his property without due process of law. I find no merit in the contention advanced in behalf of petitioner that he should be allowed to continue operations in violation of the State Hospital Code because his structure was

in existence prior to the date of the regulations. The policy of protecting the inhabitants of hospitals, nursing homes and related facilities in our State from such hazards as fire makes any analogy to cases involving a mere property interest, such as zoning cases involving pre-existing uses, fail completely. Nor do I find persuasive the arguments that respondent improperly interpreted its own regulations in determining that compliance with the Life Safety Code was a minimum requirement in all cases and that Part 713 (10 NYCRR Part 713) applied to existing facilities. Interpretations by administrative agencies concerning their own regulations must be accorded great weight and, unless clearly erroneous, should not be disturbed (1 NY Jur, Administrative Law, § 108). I also find to be without merit the argument that application of the Life Safety Code to petitioner's facility was an unconstitutional incorporation by reference.

There is no question that the respondent's determination is based upon substantial evidence. The petitioner admits that it would be impossible for him to comply with the Life Safety Code (10 NYCRR 711.2 [a]) or with Part 713 of the regulations (10 NYCRR Part 713) because of the age of his structure. Although petitioner established practical difficulty as to those code requirements from which he sought modifications (10 NYCRR 711.1 [c]) and produced further testimony to the effect that the modifications he suggested would not adversely affect the health and safety of the inhabitants of the home (10 NYCRR 711.1 [c] [1]), respondent's expert, a college professor with very impressive qualifications, testified that if the modifications sought were allowed, the health and safety of the occupants of the home would be adversely affected. In view of such conflicting testimony, there can be no doubt that the determination revoking petitioner's operating certificate was supported by substantial evidence.

The determination should be confirmed, and the petition dismissed.

SWEENEY and KOREMAN, JJ., concur with KANE, J.; HERLIHY, P. J., concurs in a separate opinion; LARKIN, J., dissents and votes to affirm in an opinion.

Determination annulled, with costs to petitioner, judgment directed to be entered declaring section 2800 of the Public Health Law unconstitutional, and matter remitted for further proceedings not inconsistent herewith. Motion denied as academic, without costs.