[764 NYS2d 82]

In the Matter of JAY A. ROSENBLUM, M.D., Appellant, v NEW
YORK STATE WORKERS' COMPENSATION BOARD, Respondent.

First Department, September 11, 2003

APPEARANCES OF COUNSEL

*Kenneth L. Kutner* of counsel, New York City (*Scott I. Einiger* on the brief; *Law Offices of Kenneth L. Kutner* and *Hoffman, Einiger & Polland*, attorneys), for appellant.

*Kathleen M. Treasure* of counsel, New York City (*Wayne L. Benjamin* on the brief; *Eliot Spitzer, Attorney General,* attorney), for respondent.

## OPINION OF THE COURT

WILLIAMS, J.

Petitioner is a state-licensed neurologist who previously had been authorized to conduct independent medical examinations (IMEs) of injured workers for the New York State Workers' Compensation Board (the WCB). When the Injured Workers' Protection Act of 2000 (L 2000, ch 473 [the IWPA]) was passed, which, inter alia, imposed new requirements of board certification and WCB authorization for physicians seeking to conduct IMEs, petitioner applied for authorization which at first was mistakenly granted. Soon thereafter, his authorization was rescinded due to his lack of certification by the appropriate medical specialty board. He subsequently brought this proceeding seeking to vacate and set aside the WCB's determination denying him authorization to conduct IMEs on its behalf, to annul the relevant WCB regulations as arbitrary, capricious and irrational as applied to him, and to grant him authorization to conduct said IMEs.

The principal issue on this appeal is whether the WCB regulation, 12 NYCRR 300.2, requiring that a physician be board certified by a medical specialty board recognized by the American Board of Medical Specialties (the ABMS) or by the American Osteopathic Association (the AOA) as a prerequisite to WCB authorization to conduct IMEs, is a rational interpretation of Workers' Compensation Law § 137 (3) as enacted by the IWPA.

The IWPA was enacted to protect injured workers who undergo IMEs as part of the workers' compensation process. It seeks to minimize the potential for wrongful suspensions of treatment and benefits, pending the outcome of the workers' compensation hearings, as a result of IMEs conducted by incompetent or biased physicians. It does so by imposing higher

professional standards on physicians and others who conduct these examinations and by giving the WCB the power to authorize who is allowed to perform these examinations and to sanction those who are incompetent or engage in misconduct. Workers' Compensation Law § 137 (3) (a) now provides that: "[o]nly a New York state licensed and board certified physician, surgeon, podiatrist or any other person authorized to examine or evaluate injury or illness by the board shall perform such independent medical examination." The pertinent regulation, 12 NYCRR 300.2, "Independent medical examinations, examiners, and entities" provides:

> "(b) * * * (2) [a]uthorized provider means a physician, surgeon * * * who possesses a current, valid and unrestricted professional license granted by the New York State Board of Regents, and meets the following requirements for authorization by the Workers' Compensation Board to conduct independent medical examinations: * * *

> "(ii) * * * (a) [a] physician or surgeon must have a degree of doctor of medicine, M.D., or * * * and must satisfactorily meet all other licensing requirements of the State Board of Medicine and Commissioner of Education, and must be board certified as defined in * * * this subdivision. * * *

> "(3) Board certified means a physician or surgeon who is certified by a specialty board that is recognized by the [ABMS or the AOA]."

"[T]he practical construction of the statute by the agency charged with implementing it, if not unreasonable, is entitled to deference by the courts" (*Matter of Louis Harris & Assoc. v deLeon*, 84 NY2d 698, 706 [1994]) "depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute" (*Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47 [1988]). Here, the WCB's specialized knowledge and understanding of underlying operational practices and ability to evaluate factual data within the context of the Workers' Compensation Law were clearly implicated (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

In our view, the WCB's interpretation of the statute was a rational exercise of discretion and is worthy of deference. Since the Legislature mandated that the physicians be "board certified" but did not designate which specialty boards should

provide the certification, the WCB correctly determined that the authority to make this designation had been delegated to it (*see* Workers' Compensation Law §§ 117, 141; *see also Matter of Employers Claim Control Serv. Corp. v Workmen's Compensation Bd. of State of N.Y.*, 35 NY2d 492, 497 [1974]; *Matter of Levine v Whalen*, 39 NY2d 510, 515-516 [1976]; *Matter of Versailles Realty Co. v New York State Div. of Hous. & Community Renewal*, 76 NY2d 325, 328-329 [1990]; *Dorst v Pataki*, 90 NY2d 696, 699-700 [1997]). It duly arrived at its interpretation after evaluating the standards for certification imposed by the various certifying boards, obtaining the recommendation of the Medical Society of the State of New York, reviewing the definition of "board certified" used in other states' statutory schemes, and relying on its own prior practice in defining "board certified" in administering its fee schedule. It reasonably concluded, as most members of the medical community likely would, that the specialty boards of the ABMS and the AOA offered the certification programs that would best promote the purposes and policy of the IWPA.

Petitioner, however, urges that "here, the question is one of pure statutory construction 'dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence [of the WCB]'" (*Rosen*, 72 NY2d at 47-48, quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]). This ignores the fact that the WCB's interpretation of the statute, which comports with its plain language, its purpose and its legislative history and gives meaning to every phrase, was a sound one even as a matter of pure statutory construction. "Board certified" is a term of art pertaining to a physician's professional qualifications (*see generally Leibowitz v Mt. Sinai Hosp.*, 296 AD2d 340 [2002]; *Geller v Harris*, 258 AD2d 421 [1999]; *Daniel v American Bd. of Emergency Med.*, 237 F Supp 2d 336, 341-342 [2002]). When it is used in this context, the rules of construction require that it be given its most obvious, commonly understood meaning (McKinney's Cons Laws of NY, Book 1, Statutes § 233 ["(w)hen terms of art * * * are used, it is supposed that the Legislature had in view the subject matter about which such terms or phrases are commonly employed"]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 232; *Castro v United Container Mach. Group*, 96 NY2d 398, 401 [2001] ["(w)ords in a statute are to be given their plain meaning without resort to forced or unnatural interpretations"]), i.e., a credential bestowed by a national, independent medical board indicating proficiency in a medical specialty.

Petitioner relies on a recent Third Department case, *Matter of Belmonte v Snashall* (304 AD2d 211 [2003]). However, we respectfully disagree with that decision.

The fundamental problem with petitioner's reading of the statute becomes readily apparent when one proceeds to apply the statutory definition of "board" in each instance the word is used. When this approach is applied to a provision like Workers' Compensation Law § 13-d (1), which uses the word "board" seven times but actually refers to the WCB only twice, the result is that the statute is thrown into disarray. We differ with the *Belmonte* court, which essentially determined that use of the term "board certified" in the statute is superfluous, reasoning that language used in the Senate Memorandum in Support of the version of the bill enacted, i.e., "those performing IMEs be state licensed and Board authorized" (*Belmonte* at 215, quoting Senate Mem in Support of L 2000, ch 473, 2000 McKinney's Session Laws of NY, at 1885 [emphasis omitted]), is persuasive evidence supporting their view that "board certified" merely refers to WCB authorization and that no import should be attached to the distinctions in how the Legislature uses the term "board" and in its use of "certified" and "authorized" (*Belmonte, supra*). Not only does this reading render "board certified" redundant in Workers' Compensation Law § 137 (3), but it ascribes greater weight to a phrase in the Senate Memorandum as an indication of legislative intent than the statutory language itself. It is the plain statutory language that is presumed to be the primary indicator of the legislative intent (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b]).

Also contrary to the view that no import should be attached to the distinctions in how the Legislature uses the term "board" and in its use of "certified" and "authorized," the statute's legislative history shows that as the bill evolved into its final form, its language reflected a legislative concern with maintaining the distinction between the requirement that IME physicians have independent medical board certification and the requirement that they be sanctioned to conduct IMEs by the WCB. The drafters evidently decided to reserve the term "certified" for reference to the former and settled on the term "authorized" or "authorization" for reference to the latter (*see* Workers' Compensation Law §§ 13-a, 13-b, 13-m). Similarly, the Legislature takes pains to use "board" in a prepositional phrase when referring to the WCB (*see e.g.* Workers' Compensation Law §§ 13, 13-a, 137 [1] [a]), not as an adjective as in

"board certified." Thus, the meaning of the phrases "board certified" and "authorized * * * by the board," used in the same sentence of Workers' Compensation Law § 137 (3) (a), is not the same. If that construction were correct, the Legislature's amendment of Workers' Compensation Law § 13-b to provide that the WCB authorize physicians to perform IMEs renders the term "board certified" in Workers' Compensation Law § 137 (3) superfluous. However, " '[w]ords are not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning' " (*Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 104 [2001], quoting *Cohen v Lord, Day & Lord*, 75 NY2d 95, 100 [1989]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 231). Hence the WCB's construction of the statute, requiring independent medical board certification of physicians and surgeons as a precondition for its own authorization of these health care professionals, but not for other health care professionals who might perform IMEs, is rational and gives meaning and effect to each part of the statute.

The Legislature has required in other instances that medical professionals who perform medical review functions be "board certified" (*see* Correction Law § 43 [1]; Public Health Law § 4900 [2] [b] [i] [B]; Insurance Law § 4900 [b] [2] [A] [ii]), including those physicians who review HMOs' denial of coverage to enrollees for experimental treatment or for services deemed "not medically necessary" (*see* Public Health Law art 49; Insurance Law art 49). In that setting, which involved a similar medical care and benefits reform provision enacted only two years prior to the statute at bar, the Legislature sought to protect consumers from unfair or erroneous denial of necessary treatment by HMOs and insurers by providing prompt, impartial review of coverage determinations. The Legislature considered only "board certified" physicians as possessing the requisite expertise to conduct external reviews of the insurers' decisions and to assure consumers "that qualified medical personnel are making treatment decisions" (Senate Mem in Support of L 1998, ch 586, 1998 McKinney's Session Laws of NY, at 1979). Consequently, it is reasonable to assume that the Legislature intended "board certified" to carry the same meaning in the similar context of the statute at bar (McKinney's Statutes § 236, at 402 ["(e)ven though the words occur in different statutes, if the acts are similar in intent and character the same meaning may be attached to them"]; *see also 81 Franklin Co. v Ginaccini*, 149 Misc 2d 124, 130 [1990]).

Petitioner's remaining arguments are without merit. The WCB's interpretation of Workers' Compensation Law § 137 (3) does not render it meaningless as to neurologists. Contrary to petitioner's assertion, the ABMS recognizes a specialty board that offers certification solely in neurology, the American Board of Psychiatry and Neurology (*see* <www.abms.org/member.asp>; <www.abpn.com/certification/certificates.html> [accessed Oct. 1, 2003]). Also, his assertion that he was wrongly deprived of a proprietary interest in conducting IMEs for the WCB sets forth nothing more than a unilateral expectation of a benefit, not a property interest implicating a constitutional right to due process (*see Matter of Ray Pharm. v Perales*, 169 AD2d 633 [1991]). He fails to identify any statute or regulation that entitles him to continue performing IMEs for the WCB; indeed, the Workers' Compensation Law clearly provides that such authorization lies totally within the discretion of the WCB.

In sum, the WCB's interpretation of the statute was a rational, judicious exercise of duly bestowed discretion with regard to a carefully drafted statute. It gives meaning to every term in the statute. Moreover, it is not irrational to require that an employer or carrier produce the opinion of an ABMS or AOA board certified physician, a physician with superior credentials, prior to unilaterally terminating the benefits or medical care a claimant is receiving. Such requirement clearly furthers the primary public policy underlying the statute. Also, it should be noted that in the motion court, petitioner did not quibble about the meaning of "board certified," rather, it was understood. His argument was directed to the limited number of independent medical boards from which respondents decided to accept certification.

Accordingly, the judgment of the Supreme Court, New York County (Herman Cahn, J.), entered on or about February 21, 2002, denying and dismissing the petition brought pursuant to CPLR article 78, inter alia, to annul respondent's determination denying petitioner authorization to conduct independent medical examinations in workers' compensation cases, should be affirmed, without costs.

Tom, J.P., Saxe, Lerner and Marlow, JJ., concur.

Judgment, Supreme Court, New York County, entered on or about February 21, 2002, affirmed, without costs.